(No. 15313.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MILTON G. SEVERINGHAUS, Plaintiff in Error.

*Opinion filed October 28, 1924.*

1. CRIMINAL LAW—*proper procedure where the defendant files sworn answer to a contempt charge.* Where a defendant files a sworn answer to a charge of criminal contempt committed out of the presence of the court no other evidence can be heard in determination of the defendant's guilt or of the enormity of the offense or as to whether perjury is contained in the answer, and the defendant is entitled to be discharged if his answer is sufficient to acquit him, but if he admits the facts charged or refuses to answer, the court is authorized to at once make a finding of guilt and proceed to judgment and fix the penalty.

2. CONTEMPT—*when disavowal of intent may be considered in mitigation of offense.* Where a defendant charged with contempt in threatening to sue the grand jury investigating charges against him makes a disavowal or denial, under oath, of intent to insult the court or deter the grand jury in its proceedings, he is entitled to have his sworn answer considered in mitigation of the offense although it is not sufficient to accord him complete justification.

3. SAME—*defendant must make a direct answer to charges of contempt committed out of court.* Where a defendant is charged with criminal contempt in making certain utterances out of court he should answer every charge definitely and directly and may state with what intent he made the declarations charged, and the fact that the court has improperly taken evidence as to the truth of his sworn answer and threatened him with prosecution for perjury does not justify the defendant in refusing to answer proper interrogatories.

4. SAME—*what constitutes contempt against grand jury.* Where a defendant is alleged to have made declarations threatening to sue the grand jury which was investigating charges against him, the fact that the grand jury had already indicted him will not prevent the utterances from amounting to contempt of court where the grand jury had not adjourned when the declarations were made but was still making investigations as to the defendant and others. (*Storey* v. *People,* 79 Ill. 45, distinguished.)

5. SAME—*an information charging criminal contempt committed out of court must be sworn to.* An information charging the defendant with criminal contempt committed out of court must be verified by affidavit, whether it is filed by the Attorney General, the State's attorney or any person acting for them, but after pleading or answering an unsworn information the defendant should not be allowed, on motion in arrest of judgment, to contend that the information was not verified.

6. NOTARIES—*act of a notary de facto cannot be attacked collaterally.* A person acting as a notary under color of authority, with public acquiescence, will be held to be a notary *de facto,* and as to the public and third persons his acts are valid and cannot be attacked collaterally, whether his disqualification is due to mere ineligibility or because he is a hold-over or has failed to take the oath of office or otherwise comply with the directory provisions of the statute.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

J. K. McMAHON, EUGENE W. ROGERS, GEORGE B. GILLESPIE, and CHESTER E. CLEVELAND, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, (I. T. GREENACRE, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Milton G. Severinghaus, was found guilty by the criminal court of Cook county of having committed a contempt of the court on November 13, 1922. The judgment and sentence of the court were that he serve a term of ninety days in the county jail of Cook county. A writ of error has been prosecuted directly to this court,

as constitutional questions were raised and presented to the lower court for its decision, pending the proceedings in that court.

This proceeding was instituted and prosecuted by I. T. Greenacre, an attorney at law, by filing an information November 16, 1922, in the criminal court of Cook county, in the name of the People and in the name of the Attorney General. His statement to the court in the record is to the effect that he had permission to use or sign the name of the Attorney General to the information which he presented to the court, asking for a rule on the defendant to show cause, if any he had, why he should not be attached and adjudged guilty of contempt for utterances set out in the information. The information charges, in substance, the following: On August 7, 1922, said court, in conformity with the law, did empanel and swear in a grand jury for the August term, 1922, of the court and appointed and had sworn a foreman thereof. The grand jury immediately, in accordance with the charge of the court, began to investigate and make findings, as the facts would warrant, in relation to alleged violations of the criminal law by present and former members of the board of education of the city of Chicago, county of Cook, and the employees and former employees of said board and by persons and firms who had done business with the board. The investigations of the matters aforesaid continued through the August term but were not completed, and on the first day of the September term, 1922, the investigations were not completed. The best interests of the public required that the investigations should continue through the September term, and upon the order of the court the grand jury was continued through the September term and the investigations were continued through that term. In like manner and for the same reasons stated in the information the grand jury was continued through the October and the November terms, 1922, of said court, and the same investigations were continued through said terms. The in-

formation then charges that on November 13, 1922, and
at the November term of the court, while said investiga-
tions were incomplete and pending before the grand jury in
relation to alleged violations of the criminal law by Mil-
ton G. Severinghaus, a person alleged to be acting in crimi-
nal concert with the present and former members of the
board of education of the city of Chicago, he contuma-
ciously, unlawfully, willfully and intentionally, to intimidate
the grand jurors of said grand jury and to interfere with
them in the performance of their duties as such, and im-
pede, obstruct, interfere with and injure the administration
of public justice, then and there said, declared, gave out,
uttered and published that he would sue each of the twenty-
three members of the grand jury; that he was going to
bring suit against all the members of the grand jury and
all the witnesses who testified against him; also, that "if
this thing is illegal I am going to bring suit for $100,000
against the grand jurors;" said utterances by the defend-
ant, or the substance thereof, have been widely published in
the public press of the city of Chicago and through said
city, county and State; such utterances and threats were
calculated to prevent, frustrate and interfere with the prog-
ress, operation and conduct of the investigations before the
grand jury and to intimidate it in the performance of its
duties as such, to bring the authority and dignity of the
court into disrepute and to impair the reputation of the
court, and to thwart and hinder the due administration of
justice by the court concerning the matters involved in
the investigations; each of the utterances, statements and
threats aforesaid was willful, wrongful, unlawful, mali-
cious and contemptuous of the court and made in the hear-
ing of other persons.

The information was not verified by affidavit. The de-
fendant was called into court just a few minutes after the
information was presented and was ruled by the court to
show cause on November 18, 1922, at ten o'clock A. M.,

why he should not be attached and punished for contempt, his counsel also being present. The defendant and his attorney appeared at the hour named and filed his answer to the information, reserving and saving all manner of objections and exceptions to the same. His answer was: "That he did not, on, to-wit, the 13th day of November, A. D. 1922, at Chicago, county of Cook, State of Illinois, contumaciously, unlawfully, willfully and intentionally, to intimidate the grand jurors or the said grand jury and to interfere with them in the performance of their duties as such grand jurors, and to impede, obstruct and interfere with and injure the administration of public justice, then and there say, declare, give out, utter and publish that he would sue each of the twenty-three members of the grand jury, and also that he was going to bring suit against all the members of the grand jury and all the witnesses who testified against him, and also that 'If this thing is illegal I am going to bring suit for $100,000 against the grand jurors,' as alleged in the information heretofore filed herein." He denied that he was a person acting in criminal concert with the present and former members of the board of education of the city of Chicago. He stated in his answer that he has been a resident of the city of Chicago for more than thirty years last past; that he has for a great number of years been engaged in the printing business; that he has never been arrested or adjudged guilty of any offense during his whole life; has never at any time done any act with the intention of committing contempt of court or with any purpose to destroy or impair the court's authority or through disrespect thereto; has never uttered any threats with the intent to prevent, frustrate or interfere with the progress, operation and conduct of the investigations of the grand jury and to intimidate the grand jury in the performance of its duties as such, as alleged in the information, and prayed that the rule to show cause be discharged and that he be

dismissed as to this charge. The answer was verified by his affidavit.

On November 20, 1922, the People filed objections and exceptions to the answer of the defendant for insufficiency. There were about fourteen different paragraphs of exceptions and objections of the People, but the sum and substance of them were that the defendant had not fully and sufficiently answered the information. On the same day the court sustained an exception to a part of the answer of the defendant not above set forth and which was a very immaterial part of the same. Greenacre then asked leave to examine and take the testimony of witnesses for the purpose of determining how he would later proceed. The defendant by his counsel strenuously objected to the court taking any evidence for the People and insisted that the court was without authority to hear any evidence for the purpose of contradicting the answer of the defendant. The court stated, in substance, that he would hear the testimony and that it would be supplemental to this proceeding, and that after this proceeding they would have a different proceeding; that the taking of evidence was primarily to determine whether or not the State would file an amended information, and secondarily to determine whether or not perjury had been committed by the defendant. The court then proceeded to hear the testimony of witnesses as to what was said by the defendant on November 13, 1922, at the office of the board of education on Clark street, over the objection of the defendant.

The first witness, Peter Mortenson, in answer to the direct question whether or not the defendant on that day used these words, or words to that effect, "He would sue each of the twenty-three members of the grand jury," answered that he overheard a fragmentary conversation in which that was a part of his statement, based, however, on the theory that the jury was illegal; that the defendant had been discussing the illegality of the grand jury. The

witness then testified, in substance, that the defendant said he was going to sue all the witnesses who testified against him, in the presence of about eight or ten persons.

Charles B. Wilson, interrogated in the same manner, testified that he heard the defendant say at the same place aforesaid, that "if this thing is illegal I am going to bring suit for $100,000 against the grand jurors; I have already brought suit for $100,000 each against the newspapers." He further testified that the defendant did not say in his presence, "I will sue each of the twenty-three members of the grand jury," and that he said nothing about suing witnesses, in his presence, and that he made some comment on the school investigation. Witness has no recollection of hearing him talk about the grand jury investigation, or the court, or any of the officers of the court, at any other time and place.

Lillian V. Clement testified, in substance, that she heard defendant make only one statement,—that he was going to sue the grand jury,—and that she thinks, but is not certain, that he also said that it would be in the papers that evening. She thinks that the investigation by the grand jury of the board of education was then being discussed.

Sadie B. Adair testified that the defendant, in the presence of many people, some of whom were perhaps newspaper men, was talking about the printing house of Severinghaus, contracts, etc., and what a wonderful reputation they had as printers and book-binders. She stated that she did not hear him say that he would sue each of the twenty-three members of the grand jury, and that he did not say that he was going to bring suit against all the members of the grand jury and all the witnesses who testified against him, or words to that effect. She heard him say, "I could have them,—I could sue them if I am found not guilty." They were talking about the contracts of the board of education being let to Severinghaus, and the defendant said, "Why, there never was any contract let by the board of edu-

cation to the Severinghaus Publishing Company," and that he was smiling, as usual.

All of the foregoing witnesses stated that they were willing to sign the questions and answers aforesaid pertaining to their testimony, when transcribed in affidavit form, for use of the State. No other witnesses testified as to what the defendant said on the day in question.

J. Louis Coath, apparently a partisan witness, testified that since the indictments in the school case have been returned, and during the investigation, it seemed as though all the members that have been indicted, or a good portion of them, had to his mind made it a point to congregate in the board rooms during committee meetings, and that while by word of mouth they had not exactly said anything, "Their presence and their effrontery and sneers, and the apparent fun they were making out of the whole thing, had a tendency to create a bad morale with the employees of the board." He further stated that the thing had traveled to an insult to him personally, and had made him feel, at times, that it was bad enough that they had to tolerate the indicted members of the board without having the balance of the clique who were indicted with them constantly coming around and using the board rooms for a sort of place to congregate and discuss various affairs, and that it was almost getting to be "Indicted Club headquarters."

Ralph Armstrong, a *Tribune* reporter, testified that on or about November 13, 1922, he wrote an article for his paper upon the expressions that Severinghaus was going to bring suit against the members of the grand jury and the witnesses who testified against him. He got it at the board of education rooms. It was published in the *Tribune,* which had a circulation around a half-million a day. He was also inclined to believe that other papers contained similar statements. He did not get his information from Severinghaus.

The defendant and his attorney took no part in the examination of the witnesses but objected strenuously to the

taking of the evidence, insisting that it was not proper un-
der any consideration. Greenacre then stated to the court
that he wished to have the witnesses sign their testimony,
and that he would ask the court for leave to file the same
by way of supplement to the complaint. He also asked for
a continuance of the cause until Monday, November 20,
1922, and for leave at that time to file interrogatories to be
answered by the defendant. The defendant moved to be dis-
charged upon his answer, and the court announced that he
would pass on this motion later, and would continue the
cause, as requested by the State, for the purposes aforesaid.

The State filed twenty interrogatories, over the objec-
tions of the defendant, in supplement of the original infor-
mation, and the defendant was ruled to answer the same
on or before November 23, 1922, at the opening of the
court. The defendant filed his answers, or purported an-
swers, to the interrogatories. As a matter of fact he an-
swered only three of the interrogatories directly and posi-
tively,—the sixth, seventh and nineteenth,—said answers
being, respectively, that he had no knowledge as to whether
or not any witness testified against him before the grand
jury; that an indictment charging him with the commission
of a criminal offense had been returned in said court by
the grand jury November 4, 1922; and that he had no
knowledge whether or not the grand jury had been dis-
charged. Interrogatories numbered 1, 2, 3, 4 and 5 he re-
fused to answer because the matters contained therein are
immaterial, irrelevant and incompetent and not pertinent to
the issues drawn as to the allegations in the information.
Those interrogatories, except No. 4, were really subject to
the objections made by the defendant. The substance of
the first three of them made inquiry as to whether or not
he had been told by any person, and if so, by whom, when,
where and under what circumstances, that he could purge
and free himself of the contempt with which he is charged,
by his sworn answers; and whether or not he had been in-

formed by any person that if in making his sworn answers to the information or to the interrogatories he should answer falsely he would be guilty of the crime of perjury even though by said answers he had succeeded in freeing and purging himself of the contempt charge, and if so, by whom, when, where and under what circumstances he was so told or informed. The fourth question was as to whether or not he had visited any of the offices of the board, and if so, how often and how long ago since he commenced such visits. The fifth interrogatory was on the subject whether he had attended, as a witness or otherwise, upon the grand jury, and if so, when and how often. The remaining twelve interrogatories, and No. 4, were really pertinent to the issues and were proper interrogatories to be asked and under all ordinary circumstances should have been answered by the defendant. As to the remaining twelve and the first five interrogatories, the defendant gave as a further reason for not answering them that his answers to the same might tend to incriminate him and lay himself liable to prosecution for a separate criminal offense other than contempt of court, and that he therefore claimed his constitutional privilege under the fifth amendment to the Federal constitution and the tenth section of the bill of rights of the State constitution. He also gave as a further reason for refusing to answer said interrogatories, that upon the hearing of this proceeding on November 20, as appears from the transcript of the evidence, the following colloquy was had between the court and the defendant's counsel, over the objections of the defendant to said witnesses testifying in this proceeding:

The court: "You won't be surprised in this case if you think I am going to overlook the testimony of sworn witnesses here as against the respondent in this case.

Counsel for defendant: "Of course, your honor has error here. You had no right to hear those witnesses at all.

The court: "You think I had no right to do so to determine perjury? If your contention is that the court has

313—30

got to absolutely ignore the sworn testimony of five or six
witnesses heard and let it go for naught, whether it be in
a contempt proceeding or some other proceeding, you have
got a wrong impression of this court."

The State then, over the objection of the defendant, pro-
duced a witness,—the notary,—to prove, and did prove by
his testimony, that he is the notary before whom the de-
fendant made oath to his answers in this proceeding; that
his commission was dated July 5, 1919, commissioning him
as notary public of Cook county for four years, and that he
had never thought it necessary to register it with the county
clerk. The court denied the motion of the defendant to
strike this testimony out of the record as incompetent, ir-
relevant and immaterial. The State then moved that its
objections to the answers of the defendant to the informa-
tion and to the interrogatories be sustained, that the same
be held insufficient, and that he be adjudged guilty of con-
tempt, as charged in the information, for want of sufficient
answers thereto and to the interrogatories. The court sus-
tained the State's motion and found that the original an-
swers to the information and the interrogatories were in-
sufficient. The defendant then made a motion in arrest of
judgment on the ground that the information filed by the
State was not under oath and that the court therefore had
no jurisdiction of the case, and made the further point that
section 6 of article 2 of the State constitution provides, in
substance, that such information should be verified by an
affidavit. The court overruled the motion and then at once
proceeded to pass judgment and sentence on the defendant,
as aforesaid.

In summing up the matters that the court considered
in determining whether or not the defendant was guilty of
contempt, the record clearly shows that the court not only
considered the evidence of the six witnesses who testified,
but also considered matters which the court professed to
know which had occurred in another proceeding before

another judge, which information the court disclosed was
not first-hand but second-hand information. The court ex-
pressly stated, also, that he considered this second-hand in-
formation in determining the enormity of the defendant's
guilt, and when the attorney for the defendant protested
against the consideration of such matters, the court asked
him this question: "Is it your contention that matters spe-
cifically denying what is alleged in the information by way
of answer, although in the breast of the court, the court
knows and has full knowledge of the fact that it is not true,
purges a person of contempt?" The attorney further pro-
tested that the court had no first-hand information that the
answer was untrue, and the court replied, "I think I have."
In further summing up the facts the court particularly dwelt
upon the testimony of J. Louis Coath, above set forth, which
was a mere conclusion of the witness and could have no
material bearing on the case as against the defendant if it
had been proper to consider the testimony of other wit-
nesses. On being directly asked the question by the defend-
ant's counsel whether or not, in passing on this case, he con-
sidered the outside matters the court had heard took place
in Judge Hebel's court, the court answered: "I am using
that in considering whether or not this is an aggravated
case, and to come to the conclusion whether or not the re-
spondent, at the time he made the charges charged in the
information, whether or not he did intend to obstruct jus-
tice." The court then concluded his remarks on the case,
after passing judgment on the defendant, with these words:
"The only deduction, the only reasonable deduction in view
of the emphatic denial of the testimony of those witnesses,
[referring to the six or seven witnesses who testified in
the case for the State,] is enough to show that perjury
was committed in the filing of the answer; and I call on
you, Mr. Greenacre, acting for and on behalf of the Attor-
ney General, to make presentment before the grand jury,
summon the witnesses to appear there who appeared in this

court for to-morrow morning, and present this matter to the grand jury."

We have stated rather fully the proceedings that took place before the court,—perhaps more so than was really necessary,—only for the purpose of showing the necessity for reversing the court's judgment.

One of the contentions made in the case is, that the court erred in considering matters *dehors* the record in determining the degree of punishment it would inflict upon the defendant as well as in determining his guilt. Ordinarily we would presume that the court did not consider improper matters in determining the defendant's guilt and the enormity of his offense, but where a case, as does this one, clearly presents the fact that the court did consider improper matters, such presumption is overcome; and we conclude that the judgment must be reversed for the reason that the court considered improper evidence in determining the defendant's guilt and improper matters of aggravation in assessing the penalty and apparently failed to consider proper matters of mitigation. In criminal contempts alleged to have been committed out of the presence of the court, if the defendant's sworn answer is sufficient to acquit him of the charge he is entitled to be discharged. No other evidence can be heard and considered by the court in the determination of his guilt or the enormity of the offense. If he admits the facts charged against him or refuses to answer when given the opportunity to answer and make his denial, the court is authorized at once to make a finding of guilt and to proceed to judgment and to fix the penalty. (*Oster* v. *People*, 192 Ill. 473; *People* v. *Seymour*, 272 id. 295; *Hake* v. *People*, 230 id. 174.) A disavowal, or denial under oath, of intent to insult the court or to slander or deter the grand jury in its duty should be considered by the court in mitigation of the offense, although it cannot be considered as a complete justification. (6 R. C. L. p. 534.) The defendant in this case did by his answer deny all intent to be dis-

respectful to the court and to deter or obstruct the grand jury in its proceedings and investigations, and he was entitled to have this part of his answer regarded and considered even though the same was insufficient to accord him complete justification for his utterances.

It is difficult to determine from this record whether or not the court considered any part of the defendant's answer in determining his punishment or whether or not he considered the answer as of no force whatever because not verified by a proper affidavit. The court allowed evidence of a notary public before whom the defendant was sworn concerning his answer, over his objections, to be taken, to the effect that he had not complied with the law in the matter of registration, and later refused to have that testimony stricken on defendant's motion. The People make an argument in this court to the effect that defendant's answer can not be considered as under oath because of the fact that the notary had failed to comply with the law in the above particular. A person acting as a notary under color of authority, with public acquiescence, will be held to be a notary *de facto,* and as to the public and third persons his acts are valid and cannot be attacked collaterally. It does not matter whether disqualification or complaint against his act is that he is ineligible for any reason, or because of the fact that he is a hold-over, or has failed to take the oath of office or otherwise comply with the directory provisions of the statute. (29 Cyc. 1075.)

It is not our intention to pass or comment upon the merits of this case. We do think that the contention of the State is well founded that the answer of the defendant is subject to the objection that he has not fully and sufficiently answered the information. The answer simply paraphrases the charges of the information and alleges that he did not utter all the language charged to him with the intent alleged. He should have taken up the charges and answered each one definitely as to whether or not he uttered the language

charged, or have denied them altogether or stated particularly what he did say. It was also proper for him to state with what intent he made the declarations, if any, and the circumstances under which he uttered them, in explanation of his entire attitude and intention. We think, also, that the court properly allowed the State to file the thirteen interrogatories that we have ruled were pertinent to the issues, and that the defendant was not justified in refusing to answer them because of the threatening attitude and statements of the State's attorney and the court, to the effect that they were intending to investigate him on the charge of perjury and to have him indicted for the same, and intended to introduce witnesses in the proceeding for the purpose of determining whether or not he had committed perjury by his answers to the information and to the interrogatories. We do not think that the court and the State's attorney were at all justified in assuming this hostile attitude in advance of his filing his answers to the interrogatories. The attitude of the State's attorney and of the court both justified his conclusion that they were unnecessarily hostile to him and intended to have him indicted for perjury if he denied the utterances charged to him, but that did not justify him in refusing to make proper and full answers to all interrogatories properly propounded to him. He was justified in refusing to answer all questions concerning his relations, if any, with the board of education on the ground that he might incriminate himself in doing so, if such was the fact; but this is not true as to the pertinent questions or interrogatories to which we have already referred. It is also true that the record shows that the grand jury in question had indicted him, but it does not show that the grand jury was through with the investigations as to him or that the grand jury had adjourned. The charge in the information is direct and positive that the grand jury was then in session and that it had not concluded its investigations as to the defendant. It cannot, therefore, be claimed by the

defendant that his utterances could, at most, only be considered as a libelous publication on the grand jury for acts completed by it in its official capacity, as was held in the case of *Storey* v. *People,* 79 Ill. 45.

On the question whether or not it was incumbent on the State to have the information verified by affidavit, we are of the opinion that such was necessary under the decision of this court in *People* v. *Clark,* 280 Ill. 160, and that that is so whether the information was filed by the Attorney General, the State's attorney or any of their deputies acting for them. When such an information is filed the defendant may be arrested by a warrant or an attachment and brought into court to show cause why he should not be dealt with as for contempt of court. It is true that a proceeding in contempt of the character now under consideration is an offense against the court as an organ of public justice and not for a violation of the criminal law, but the proceeding is criminal in form and in substance, and may subject the defendant to either fine or imprisonment, or both. We are not, however, inclined to hold that such an information must have all the formalities of a criminal complaint filed against the defendant for a violation of the criminal law and under which he may be tried by a court and a jury and to hold that it shall conclude "against the peace and dignity of the" People of the State of Illinois, as provided in section 33 of article 6 of our constitution. An indirect contempt is usually brought to the knowledge of the court by an affidavit or by information setting forth the facts, or some equivalent proceeding which fairly informs the contemnor of the charge, and a formal complaint is not necessary. (6 R. C. L. p. 531.) There is just the same reason for having the information verified by affidavit as there is for having the affidavit properly verified, and this seems to have been the prevailing practice in Illinois in proceedings for contempt both at law and in equity,—that is, that the affidavit, the information or the petition in equity be positively

verified by an affidavit. (*Flannery* v. *People,* 225 Ill. 62.) Irrespective of section 6 of the bill of rights, no citizen should be arrested and forced to answer under oath when matters of contempt are charged against him, unless the information, the affidavit or the petition upon which the court acts is also properly verified by affidavit. In this case the attorney, Greenacre, merely had permission of the Attorney General to file the information. He was not a deputy of the Attorney General or of the State's attorney, so far as the record shows, and if the request had been made in apt time the court should have ruled that he verify or have verified the information that he filed. We are further of the opinion, however, that the objection to the information in this regard was made too late by the defendant, and that after pleading or answering the information he should not be allowed, on motion in arrest of judgment, to contend that the pleading of the State was not verified. It is against all rules of pleading to take advantage of such formal defect, or to permit the same to be done, after the defendant has answered the pleading and thus has confessed to its sufficiency in the matter of its allegations, where such deficiency relates merely to an informality in the matter of being verified.

The defendant seeks to make the further contention in this case that the grand jury was an illegal body, and perhaps other matters of defense are argued, but they cannot be considered in this court for the reason that no such contentions were raised in the lower court.

For the reasons aforesaid the judgment of the court is reversed and the cause is remanded for further proceedings, with leave to either party to make proper amendments to either the petition or the answer, as he may see fit.

*Reversed and remanded, with directions.*