The People of the State of Illinois, Defendant in Error, v. Jules Rosenthal, Plaintiff in Error.

Gen. No. 39,589.

Opinion filed March 16, 1938. Rehearing denied April 1, 1938.

HERBERT M. WETZEL, of Chicago, for plaintiff in error; WILLIAM J. EARLEY, of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

On April 7, 1937, an information was filed in the criminal court of Cook county, entitled, The People of the State of Illinois v. George Bruns, Archie Estep, Harold Stanyer, George Cameron, Martin Even, Frank DeLong, Jules Rosenthal, Joseph DeFrank, John L. Moore, Alvin Ernest, Leo Fahey and Morley Frank. The salient portions of the information are as follows:

"Now comes Thomas J. Courtney, State's Attorney, in and for Cook County, Illinois, by Wilbert F. Crowley, Assistant State's Attorney, and respectfully informs the Court as follows: That on the 25th day of January, 1937, there was pending in the Criminal Court of Cook County Indictment Numbered 36–1187 entitled *The People of the State of Illinois v. Frank V.*

*Zintak,* wherein Frank V. Zintak was charged with the crime of larceny by embezzlement; that on the 25th day of January, 1937, said cause was duly and regularly called for trial and was placed on trial and prospective jurors were examined as to their qualifications to sit as jurors upon a determination of said cause; that upon the selection of said jury the said jurors were required to and did take an oath to well and truly try the issues joined in said cause and a true verdict render according to the law and the evidence in the case; that thereafter evidence was adduced in said cause on behalf of the People of the State of Illinois, and on behalf of said Frank V. Zintak, and the said hearing was adjourned from day to day after each court session until the 3rd day of February, 1937, when the said jury, after having received all of the evidence offered in said cause, and after having received the written instructions of the court, retired to consider their verdict, and did consider and did arrive at a verdict, which verdict, signed by the twelve jurors, was returned into open court, and by said verdict the defendant Frank V. Zintak, was found not guilty; that during the period from January 25, 1937, to and including February 3, 1937, the members of the jury selected for service in said cause and sworn and qualified as jurors upon the hearing thereof were as follows: George Bruns, Jules Rosenthal, Archie Estep, Joseph DeFrank, Harold Stanyer, John L. Moore, George Cameron, Alvin Ernest, Martin Even, Leo Fahey, Frank DeLong and Morley Frank, and that each and every of the aforesaid persons served as duly qualified jurors throughout the trial; that from the beginning of the trial of said cause the trial judge ordered and directed that the jurors selected to serve during the hearing of said cause be kept together and not permitted to separate and that they be not allowed to make contact with outside persons

or to speak to such outsiders during the pendency of the proceedings in Court and the recesses thereof, and duly authorized deputy bailiffs and deputy sheriffs were ordered and assigned by the Court to care for and supervise the said jury throughout the trial of said cause and were by oath administered in the presence of such jury required to keep said jury together and required not to permit any one to speak to them; that each of the aforesaid jurors heard the oath and direction of the trial Judge, and each of the aforesaid jurors understood the said order and direction and knew that as such jurors they were required to remain together and not to separate and not to have any contact with the outside world; that pursuant to said order the Sheriff of Cook County provided special and separate living, sleeping and eating quarters for said jury during the pendency of said trial; that on divers dates throughout the hearing of said cause intoxicating liquors, beer and whiskey were brought to the jurors' quarters after the court sessions; that on Saturday, January 30, 1937, in the forenoon, the twelve aforesaid jurors, accompanied by a deputy sheriff and bailiff, did enter two different public drinking places and did in each of said places drink three or four glasses of beer at the bar in each of said places in the presence of members of the public; that on January 30, 1937, at about the hour of 10:00 p. m. or thereafter, the said twelve jurors left their jury quarters assigned to them and went to a public drinking place and tavern and there entered said public drinking place and tavern and in the presence of a great number of other persons engaged in drinking and dancing and mingled with the patrons there present generally and talked with them, and said jurors did separate and did not remain together, and said jurors so conducted themselves for a period of upwards of two hours until after the hour of midnight, when they re-

turned to their jury quarters; that on Sunday, January 31, 1937, the aforesaid twelve jurors, in company with a deputy sheriff were by leave of court granted permission to go for a bus ride; that each of said jurors knew that such permission to go for a bus ride granted them did not authorize them to use said bus as a conveyance for making a round of taverns; that on said date the said jurors and said bailiff left the Administration Building at about the hour of 2:00 P. M. and entered a bus provided for them for said bus ride and were conveyed in said bus to five different and distinct taverns, in each of which said taverns the said jurors stood at the public bar in the presence of members of the public and drank beer, and in at least one of said places played slot machines located therein, and in several of said places did not remain together but separated, and in several of said places purchased quantities of beer and whiskey to carry back with them to their jury quarters, and in one of said places engaged in noisy and disorderly conduct, while riding in said bus engaged in singing songs, and in several of said places announced themselves publicly as 'Zintak jury' and in one of said places switched off the electric lights, and in one of said places one juror took a bar stool and left the premises with same carried under his overcoat, and several of said jurors were intoxicated and under the influence of intoxicants which they had consumed during said trip, and said jurors, accompanied by said bailiff, returned to the Administration Building and returned to their quarters bringing with them quantities of beer and whisky, which said beer and whisky they consumed in their quarters; that each of said jurors well knew that their conduct in possessing and drinking intoxicants in their jury quarters and their conduct in attending upon public taverns and dancing with the patrons of said

taverns and drinking intoxicants and commingling with the public patrons of said taverns, and in engaging in noisy and disorderly conduct on said bus ride, and in separating and failing to remain together, constituted improper and wrongful acts on their part and was a violation of their obligations and duties as jurors and amounted to a failure on their part to observe the order of the court; that said jurors, among themselves and well knowing that said conduct on their part was wrongful and improper, entered into an agreement and understanding to withhold knowledge of such conduct from the trial judge by remaining silent concerning their acts and doings in this connection; that one of the places visited on Sunday, January 31, 1937, was a tavern and public drinking place owned and operated by one James Farmed, who had theretofore been a defendant under indictment in the Criminal Court of Cook County, and that in the said place the members of the jury were permitted to gamble in the presence of the public.

"Wherefore your informant respectfully moves that this Honorable court take cognizance of the act and conduct herein set forth of the said George Bruns, said Archie Estep, said Harold Stanyer, said George Cameron, said Martin Even, said Frank DeLong, said Jules Rosenthal, said Joseph DeFrank, said John L. Moore, said Alvin Ernest, said Leo Fahey and said Morley Frank, and that this Honorable Court take cognizance of the sworn testimony with reference thereto heretofore adduced before this Honorable Court during the judicial investigation as aforesaid, and that this Honorable Court enter an order herein requiring the said George Bruns, the said Archie Estep, the said Harold Stanyer, the said George Cameron, the said Martin Even, the said Frank DeLong, the said Jules Rosenthal, the said Joseph DeFrank,

the said John L. Moore, the said Alvin Ernest, the said Leo Fahey and the said Morley Frank to appear before this Honorable Court on such early date as this Court may determine and that said George Bruns, said Archie Estep, said Harold Stanyer, said George Cameron, said Martin Even, said Frank DeLong, said Jules Rosenthal, said Joseph DeFrank, said John L. Moore, said Alvin Ernest, said Leo Fahey, and said Morley Frank be required to file their written answers and show cause by such answers why they and each of them should not be held to be in contempt of this Honorable Court for their conduct as aforesaid; and that this Honorable Court will do any and all further things necessary in the premises and make such further orders and directions in this matter as the Court shall deem proper.

"(Signed) Thomas J. Courtney,
State's Attorney
(Signed) by Wilbert F. Crowley,
Assistant State's Attorney."

Attached to and a part of the information is the following:

"State of Illinois }
County of Cook } ss.

"Wilbert F. Crowley, being first duly sworn, on oath deposes and says, that he has read the above and foregoing Information by him subscribed, and states that upon information and belief the contents thereof are true in substance and in fact.

"(Signed) Wilbert F. Crowley

"Subscribed and sworn to before me this seventh day of April, A. D. 1937.

"(Signed) Thomas J. Bowler,
Clerk of the Criminal Court."

After a hearing, the court, on April 23, 1937, entered the following finding and order as to the contemnor, Jules Rosenthal:

"IN THE CRIMINAL COURT OF COOK COUNTY, ILLINOIS.

The People of the State of Illinois ⎫ In Contempt
vs. ⎬ No. 37–641
Jules Rosenthal, Respondent ⎭

ORDER AND JUDGMENT.

"This matter coming on to be heard upon the information and petition of Thomas J. Courtney, State's Attorney of Cook County, Illinois, by Wilbert F. Crowley, Assistant State's Attorney, and upon the interrogatories attached thereto and filed herein, and a rule to show cause pursuant thereto having been heretofore entered upon Jules Rosenthal, contemnor herein, to show cause, if any he has, why he should not be adjudged guilty, and punished for a contempt of this court; and the contemnor being further ruled and required to make answer to the information, petition and interrogatories herein filed; and the contemnor having made written answer under oath herein; and the contemnor having of his own motion asked leave of court to allow this testimony heretofore given in open court upon the judicial investigation of the within cause to stand as an additional answer and his answer to said interrogatories; and the court, having granted said motion, allows the said testimony of the said contemnor to stand as his additional answer and also as his answer to the said interrogatories; and the Court, now being fully advised in the premises, finds:

"1. That on the 25th day of January, A. D. 1937, there was pending in the Criminal Court of Cook County indictment numbered 36–1187 entitled '*The*

*People of the State of Illinois* v. *Frank V. Zintak,'* wherein Frank V. Zintak was charged with the crime of larceny by embezzlement, and the said cause numbered and entitled as aforesaid was duly and regularly assigned for trial to this court, and that the date of the commencement of said trial was set for the 25th day of January, A. D., 1937.

"2. That on the 25th day of January, A. D., 1937, issue having been joined therein, said cause numbered 36–1187 was duly and regularly placed on trial and prospective jurors were examined as to their qualifications to sit as jurors upon a determination of said cause.

"3. That a jury was selected in said cause, and that contemnor herein, was a member of said jury so selected and accepted to try said cause, and did with his fellow jurors take an oath to well and truly try the issues joined in said cause and a true verdict render according to the law and the evidence in the case; that evidence was heard on behalf of both parties, and that the hearing of the cause was adjourned from day to day after each court session until the 3rd day of February, A. D., 1937, when the said jury, after having received all the evidence offered in said cause and after having received the written instructions of the court, retired to consider their verdict, which said verdict, signed by the twelve jurors, was returned into open court, and by which verdict the defendant, Frank V. Zintak, was found not guilty and cause numbered 36–1187 was then and there on said 3rd day of February, A. D., 1937, terminated.

"4. That Jules Rosenthal, the contemnor herein, was selected for service as a member of said jury in said cause, and was sworn and qualified as a juror therein, and served as such duly qualified juror throughout the trial of said cause.

"5. That from the beginning of the trial of said cause this Court ordered and directed that the jurors selected to serve during the hearing of said cause be kept together and not permitted to separate, and that they be not allowed to make contact with outside persons or to speak to such outsiders, during the pendency of the proceedings in court and the recesses thereof, and duly authorized deputy bailiffs and deputy sheriffs were ordered and assigned by this court to care for and supervise the said jury throughout the period of the trial of said cause, and were by oath administered in the presence of such jury required to keep said jury together and required not to permit any one to speak to them; that each of the jurors, including Jules Rosenthal, contemnor herein, heard the direction given by this Court and heard the oath administered to the deputy sheriffs by the clerk of this court, and each of the said jurors, including Jules Rosenthal, contemnor herein, understood the said order and direction of this Court and knew that as jurors they were required to remain together and not to separate and not to have any contact with the outside world.

"6. That the Sheriff of Cook County provided special separate living, sleeping and eating quarters for said jury in the Administration Building adjacent to the Criminal Court Building during the pendency of said trial, and that these special quarters were so provided in order to render effective the order of this court requiring said jurors to be kept together and to be kept separate from the outside world.

"7. That the contemnor, Jules Rosenthal, while a member of said jury, did on the forenoon of the 30th day of January, A. D., 1937, enter a tavern located in the vicinity of Twenty-sixth Street and California Avenue in Chicago, Illinois; that again on the forenoon of said date he did enter a second tavern located

in the vicinity of Twenty-fourth street and California Avenue in Chicago, Illinois; that on the evening of the said date of January 30, 1937, after the hour of eight o'clock p. m., he entered a tavern and dance hall located in the vicinity of Twenty-sixth Street and Kedzie Avenue in Chicago, Illinois; that the contemnor herein, on Sunday, the 31st day of January, A. D. 1937, at about the hour of 2:30 P. M. entered a tavern located in the vicinity of Twenty-second Street and Wolff Road in Cook County, Illinois; that on the same date thereafter he entered a tavern operated by one James Farmed located on Lake Street in the Village of Maywood, Cook County, Illinois; that thereafter on the same date he entered a tavern known as Brun's Palm Garden in the Village of Forest Park, Cook County, Illinois; that thereafter on the same date he entered a tavern located at Laramie Avenue and Harrison Street, in Chicago, Illinois; and that thereafter on the same date he entered a tavern located at Keeler Avenue and Harrison Street in Chicago, Illinois.

"That each of the aforesaid taverns was a drinking place, and that in the aforesaid places the said contemnor herein, Jules Rosenthal, engaged in drinking alcoholic and intoxicating beverages; that in the aforesaid public taverns divers members of the public generally were present and the contemnor herein commingled in said places with the public generally; and that in the aforesaid places the contemnor herein separated from the other members of the jury.

"8. That on Saturday, the 30th day of January, A. D., 1937, while in the public tavern and dance hall located in the vicinity of Twenty-sixth Street and Kedzie Avenue in Chicago, Illinois, the said contemnor, Jules Rosenthal, did separate from other members of the jury and did engage in drinking alcoholic and intoxicating beverages while other jurors did engage in conversation with girls then and there present and

unknown and did separate from certain other jurors who then and there did engage in dancing in said public dance hall with said girls, and did remain in said public tavern and dance hall for a period of several hours.

"9. That on Sunday, the 31st day of January, A. D., 1937, with the consent of the parties to said cause and by permission of this court, the said jury were allowed to go for a bus ride; that each of said jurors, including Jules Rosenthal, the contemnor herein, was present in open court and was informed that they were to be permitted to go for a bus ride to relieve their confinement; that each of said jurors, including the contemnor herein, knew that the permission given to them as a jury to go for a bus ride was limited to their use of the bus for riding purposes, and each well knew that they were not to use said bus as a conveyance to take them to public taverns and drinking places; that a bus was furnished said jurors for said bus ride on Sunday, January 31, 1937, and that said bus was used by said jurors as a conveyance to take them to public taverns and drinking places, and that said jury, including the contemnor herein, Jules Rosenthal, on said date, entered five different, separate and distinct public taverns and drinking places and in said places the contemnor herein with other members of said jury engaged in drinking alcoholic and intoxicating beverages, and the contemnor herein remained with said jury and a deputy bailiff in said places for periods of upwards of one-half hour in each place.

"10. That during the trial of said cause, while the said contemnor, Jules Rosenthal, and his fellow jurors were confined in the jurors' quarters in the Administration Building, the said contemnor, on divers days and times, and knowing such conduct was improper, engaged in drinking alcoholic and intoxicating beverages.

"11. That this contemnor, Jules Rosenthal, knowing that said conduct was wrongful, did agree with his fellow jurors to withhold knowledge of said acts and conduct from this court, and that he did so withhold knowledge of said conduct from this court by maintaining silence as to said conduct.

"12. That all of the aforesaid acts and conduct of the contemnor tended to interfere with the proceedings and to lessen the dignity of this court; that the contemnor, by such acts and conduct as a juror, displayed a complete lack of respect and regard for this court and interfered with and prejudiced the rights of the parties to said cause, and that the contemnor, by such conduct, was contemptuous of the dignity of the court and acted in a manner such as to degrade the law and the administration of justice; and that the said contemnor, Jules Rosenthal, failed to show cause why he should not be punished for a contempt of this Court for said acts and conduct, and that by reason of the said acts and conduct the contemnor, Jules Rosenthal, is guilty of a contempt of this court.

"And the said contemnor, Jules Rosenthal, being now present in open court in his own proper person, and not saying anything further why the judgment of the court should not now be pronounced against him on the finding of guilty entered in this cause, the Court Finds that it has jurisdiction of the subject matter of this cause and of the parties hereto;

"And It Is Therefore Considered Ordered and Adjudged By This Court That the said contemnor, Jules Rosenthal, is guilty of a contempt of this court on said finding of guilty, and he is hereby, because of the said contempt, committed to confinement in the county jail of Cook County, Illinois, for the term of three (3) days from and after the delivery of the body of said contemnor, Jules Rosenthal, to the Jailer of said County, and that the body of the said Jules Rosenthal

be taken from the bar of the Court to the common jail of Cook County, and the Sheriff of Cook County is hereby commanded to take the body of the said Jules Rosenthal and confine said body in said County Jail of Cook County for the term of three (3) days from and after the delivery of the body of said Jules Rosenthal in safe and secure custody during said term as aforesaid, and that the said Jules Rosenthal be thereafter discharged, unless sooner discharged by due process of law.

"Enter: Benjamin P. Epstein, Judge of the Circuit Court of Cook County and Ex-officio Judge of the Criminal Court of Cook County."

On the same date, a similar order and judgment was entered as to the contemnor Martin Even, except that his sentence was fixed at 5 days in the county jail.

The respondents, Jules Rosenthal and Martin Even, by separate writs of error, seek to have the orders and judgments reversed. The cases are here docketed as Nos. 39,589 and 39,590, respectively, and, by the agreement of the parties, the two causes have been consolidated for the hearing. In each case, the petition and orders constitute the entire record here.

The assignments of error are to the effect that the information does not comply with the requirements of section 33, article 6 of the Constitution of Illinois, in that it did not confer jurisdiction on the trial court to hear the cause and render judgment, that the affidavit attached to the information, being upon information and belief, is insufficient to confer jurisdiction on the court, that the facts charged tended to impair his competency as a juror to try the case of *People v. Zintak,* that the information fails to show that the contemnor came in contact with, or talked to

any persons concerning the cause on trial, and that the, judgment of the court under this information, operates to deprive the respondents of their liberty without due process of law.

In *People v. Severinghaus,* 313 Ill. 456, plaintiff in error was found guilty of contempt by the criminal court of Cook county, and in that case, similar questions were raised as to the sufficiency of the information, and the court said:

"We are not, however, inclined to hold that such an information must have all the formalities of a criminal complaint filed against the defendant for a violation of the criminal law and under which he may be tried by a court and a jury to hold that it shall conclude 'against the peace and dignity of the' People of the State of Illinois, as provided in section 33 of article 6 of our constitution."

Further, the record here fails to disclose that any question was raised as to the information by either of the respondents, but on the contrary, from the finding of the court, we are led to the conclusion that they each voluntarily proceeded to a hearing on the information as filed, without questioning it.

On this question, the court in *People v. Severinghaus, supra,* said: "We are further of the opinion, however, that the objection to the information . . . was made too late by the defendant, and that after pleading or answering the information he should not be allowed, on motion in arrest of judgment, to contend that the pleading of the State was not verified. It is against all rules of pleading to take advantage of such formal defect, or to permit the same to be done, after the defendant has answered the pleading and thus has confessed to its sufficiency in the matter of its allegations, where such deficiency relates merely to an informality in the matter of being verified." We are

of the opinion that the objections raised as to the sufficiency of the information filed here, are without merit.

The court's finding indicates that after these jurors were qualified and sworn to try the *Zintak* case, they were definitely and particularly instructed by the court before whom that case was being tried, that they were not permitted to separate, and were not allowed to make contact with or speak to outsiders during the pendency of the proceeding. The courts' finding also indicates that each of these jurors not only violated the court's order in these respects, but that they did so in a very questionable manner. Such conduct on the part of jurors is not to be tolerated if justice is to prevail.

It is also insisted by the contemnors that in view of the fact that the *Zintak* case terminated on February 3, 1937, and that the information herein was not filed until April 23, 1937, that the court was without jurisdiction to enter the order. We find nothing in the record to indicate that these persons raised any such question before the court at the time the information here was on hearing, but whether it was raised or not, we are of the opinion that the point is without merit.

For the reasons hereinbefore stated, and in view of the state of the record, we are of the opinion that the judgment of the criminal court should be, and it is hereby affirmed.

*Affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.