(No. 26862.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM A. DOSS, Appellant.

*Opinion filed January 21, 1943—Petition for rehearing stricken March 11, 1943.*

DWIGHT H. Doss, for appellant.

GEORGE F. BARRETT, Attorney General, (OLIVER D. MANN, Special State's Attorney, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, William A. Doss, was adjudged guilty of criminal contempt by the circuit court of Piatt county and fined $2000 and sentenced to imprisonment in jail for a period of three months, the sentence to not run concur-

rently with any other sentence. He prosecutes a direct appeal on the ground, among others, that the order of conviction infringes the constitutional guarantees of liberty of the press and freedom of speech.

An information was filed January 15, 1942. The amended information, filed May 9, 1942, charged defendant with delivering or causing to be delivered a copy of each of five issues of *The Liberty Press,* published by him, to the foreman and a majority of the members of the Piatt county grand jury then in session investigating alleged violations by defendant of the criminal libel law which had previously appeared in his paper. It was also alleged that some of the issues of the paper were sent by mail to several of the members of the grand jury. The five issues of defendant's publication appear in the amended information. No useful purpose can be served by narrating, in detail, the voluminous contents of the issues of *The Liberty Press* sent by defendant to the grand jury. It suffices to observe that the language of the excerpts is intemperate in the extreme, and consists largely of accusations against the members of the bar of Piatt county, attacks against the State's Attorney of the county, and, also, the special State's Attorney who was appointed special prosecutor to act with reference to the questions concerning the alleged violations of the criminal libel law by defendant, and of repeated efforts to dissuade the grand jury from returning indictments against him. Those portions of the five issues made a part of the amended information abound in vilifying and vituperative statements concerning the objects of defendant's spleen. The articles urge the grand jurors to not follow the advice and recommendations of the prosecutors and, instead, to be guided by the advice of the defendant. Defendant's motion to strike the information was overruled. Thereafter, he answered, admitting that he published the five issues of *The Liberty Press* in question, and delivered or caused to be delivered a copy of each of

them to the foreman and the majority of the members of the grand jury, and that he mailed copies to other members of the grand jury, but denied that they constituted contempt of court, or that they were intended to wrongfully influence the grand jury in the performance of its duty.

In the meantime, on February 10, 1942, defendant applied for a change of venue from Judge W. S. Bodman, presiding judge of the circuit court of Piatt county. His application was granted and, on February 10, he filed a petition for change of venue from Judge F. B. Leonard, another of the judges of the circuit court. No formal order was entered with respect to this second petition. It was, however, in effect, acted upon and allowed by Judge C. Y. Miller, the third of the judges of the circuit court, on March 6 in a written statement in which he stated that he would not try the contempt charge, and that the three judges had decided that the administration of justice would be best served by asking the Supreme Court to assign a trial judge to the county. March 11, 1942, on motion of the three judges of the sixth judicial circuit, this court ordered that Judge James V. Bartley, one of the circuit judges of the twelfth judicial circuit, be assigned to preside in the circuit court of Piatt county, at such times and for such period as may be necessary to dispose of the matters pending against William A. Doss. May 19, 1941, defendant filed a petition for change of venue from Judge Bartley. This petition was denied.

Defendant contends that the denial by Judge Bartley of the petition for change of venue constitutes reversible error. The contempt charged against defendant was a constructive criminal contempt committed out of the presence of the court, one which partakes of a criminal nature. Section 26 of the Venue Act provides that no more than one change of venue shall be granted to a defendant. (Ill. Rev. Stat.

1941, chap. 146, par. 26.) The right to a change of venue is statutory, and the applicant must bring himself within the statutory requirements. (*People* v. *Touhy,* 361 Ill. 332; *Hutson* v. *Wood,* 263 id. 376.) Defendant was granted a change of venue from Judge Bodman and was, for all practical purposes, granted a second change of venue from Judge Leonard. His complaint is that his third request was refused. For the adequate reason that under section 26 of the Venue Act he was entitled to only one change of venue, there was no error in the denial of the petition by Judge Bartley. Defendant argues, however, that the amended information, filed May 9, 1942, constituted a new cause of action, and that, hence, the previous changes of venue cannot be considered. No authority is cited, and we have been unable to find any, for this novel proposition. It is elementary that the filing of an amended information or an amended complaint does not necessarily constitute a new cause of action. Moreover, defendant is not in a position to contend that the amended information presented a new cause of action against him since he has failed to include the original information in either the record or his abstract. Upon the record thus made, there is no possible way of determining whether the amended information did, as asserted, constitute a new cause of action.

Apart from the fact that defendant has failed to satisfy procedural prerequisites with respect to his contention concerning change of venue and that substantive grounds adequately support the denial of his third petition, there is re-. spectable authority for the proposition that statutory provisions relative to change of venue do not apply to proceedings to punish contempts, unless such proceedings are expressly included, *eo nomine,* in the statute. (Rapalje on Contempts, p. 110; *State of Oklahoma ex rel. Short* v. *Owens,* 125 Okla. 66; *Van Dyke* v. *Superior Court,* 24 Ariz. 508; *Tucker* v. *State,* 35 Wyo. 430.) The reason

assigned for inapplicability of change of venue statutes to contempt proceedings is that a contempt is neither civil nor criminal in fact, but *sui generis*.

Defendant claims that he was entitled to a trial by jury, as requested. In a case, as here, where a contempt proceeding is instituted to maintain the court's authority and to uphold the administration of justice, and where the acts charged were not committed in the presence of the court, a sworn answer denying the alleged wrongful acts is conclusive, extrinsic evidence may not be received to impeach it, and the defendant is entitled to his discharge. (*People* v. *Whitlow,* 357 Ill. 34; *People* v. *McDonald,* 314 id. 548; *People* v. *Seymour,* 272 id. 295.) If the answer is false, the remedy is by indictment for perjury. (*People* v. *McLaughlin,* 334 Ill. 354.) On the other hand, if the answer admits the material facts charged to be true and the facts constitute a contempt of court, punishment is imposed. (*People* v. *Parker,* 374 Ill. 524; *People* v. *Seymour, supra.*) In either event, the offender is tried solely upon his answer. It follows, necessarily, that the defendant is not entitled to a trial by jury because no issue of fact is or can be formed for a jury to try. *People* v. *Seymour, supra; O'Brien* v. *People,* 216 Ill. 354.

The gist of several errors relied upon by defendant for a reversal is to the effect that the amended information should have been stricken on his motion. It is now definitely settled in Illinois that written communications to members of a grand jury while in session, containing malicious accusations against private citizens and public officials, including the State's Attorney, and couched in such language that they can serve no useful purpose but show only personal enmity, constitute contempt of court as an unauthorized interference with the administration of justice, even though the letters do not refer to cases pending before the grand jury. (*People* v. *Parker, supra.*) The amended information satisfies the requirements of the law

as a pleading, and it affirmatively appears from the information that defendant sent copies of five different issues of his paper to members of the grand jury while in session, with respect to matters pending before the grand jury directly affecting defendant himself. The motion to strike was properly overruled.

In an analogous case, *Commonwealth* v. *McNary*, 246 Mass. 46, the Supreme Judicial Court of Massachusetts, in deciding, as a matter of law, that the sending of a letter by one under investigation to members of the grand jury, in view of attending circumstances, could have been found to be a contempt of court, observed: "The court has the power and is charged with the duty of punishing for contempt any one whose conduct interferes with or has a tendency to obstruct the grand jury. Such conduct is as much contempt, and punishable as such as that which interferes with or has a tendency to obstruct the administration of justice in the courts in another form or manner. It may be as necessary to put forth the power of the court to protect itself against contempts committed against this instrumentality of justice as against others. It is a contempt of the court of which the grand jury is a part to obstruct its normal and legal functions."

Defendant complains that the court erred in declining to permit him to produce witnesses, including two members of the grand jury, upon the hearing of the contempt proceeding. In a contempt alleged to have been committed beyond the presence of the court, no evidence other than defendant's sworn answer can be heard and considered by the court in the determination of his guilt or the enormity of the offense. (*People* v. *Severinghaus,* 313 Ill. 456.) In short, error would have been committed had the court allowed witnesses to testify in this action.

Defendant contends that the court erroneously adjudged him guilty of contempt. It is established that when communications to a grand jury having a tendency to directly

impede, embarrass or obstruct it in the discharge of any of its duties remaining to be discharged after the publications were made, such publications constitute contempt. (*People v. Parker, supra.*) It is manifest that defendant was seeking, by all means at his command, to influence the grand jury in its deliberations concerning the criminal charges under investigation with respect to the alleged criminally libelous articles published by him in *The Liberty Press*. His paramount purpose was to influence the grand jury to not indict himself. The publications go further and indirectly, if not directly, urge that several members of the bar of Piatt county, including the State's Attorney, be indicted. In addition, he repeatedly professed innocence of any criminal charges, told the grand jurors that the State's Attorney was not correctly advising them concerning the law, and arrogated to himself the duty of instructing the grand jury as to the law. Defendant's actions were highly contumacious, as he well knew. More than five years ago he had been charged with circularizing the grand jury by mail regarding a matter to come before it. He admitted mailing the articles in question to each grand juror prior to the meeting of the grand jury. Particularly pertinent is our observation made at the time of defendant's disbarment (*In re Doss*, 367 Ill. 570) : "The publication of the newspaper articles, regardless of when they appeared, and especially the circularization of the grand jury are especially to be condemned. The invariable effect of this sort of propaganda is to create disrespect for the courts and bring the legal profession into disrepute with the public."

Defendant argues, however, that his efforts neither influenced nor appreciably affected the actions of the grand jury. The success or failure of an attempt to influence the jury is not the test of liability, since no one can know what, if any, effect it had. (12 American Jurisprudence, Contempt, sec. 37.) Defendant's contention does not, however, square with his argument, as he states in his brief

that the actions of the State's Attorney and Special State's Attorney "undoubtedly did unlawfully so interfere with the grand jury's actions and deliberations that it netted them, according to the record, four indictments, although I admit they had demanded more indictments." We do not deem it material whether defendant's actions actually influenced the grand jury. That he intended the five issues of *The Liberty Press* to influence the grand jury is beyond doubt. They reflect a coolly calculated tendency to directly impede, influence, embarrass and obstruct the grand jury in the discharge of its duties. The constitutional guaranties invoked by defendant were never intended to and do not sanction such conduct as exhibited by defendant. These rights are not absolute. Neither liberty of the press nor freedom of speech have yet become license.

Finally, defendant complains that the punishment imposed was too severe. A disavowal, or denial under oath, of intent to insult the court or to slander or deter the grand jury in its duty, should be considered by the court in mitigation of the offense but it cannot be considered as a complete justification. (*People* v. *Parker, supra; People* v. *Severinghaus, supra.*) By his own admission, defendant published and circulated copies of *The Liberty Press* "by the thousands," in Piatt county, thereby indicating he was well able to pay the fine. Defendant was for approximately thirty years a member of the bar of this State and during this period he occupied positions of public honor and responsibility as county judge and State's Attorney of Piatt county. As an active practitioner, as a former jurist and a former prosecutor, he was particularly well qualified to know the effect likely to be produced upon the grand jury by the articles written and published by him in *The Liberty Press.* These circumstances, together with the admonition of this court in 1937 render his conduct in forwarding the papers to the grand jurors inexcusable.

The order of the circuit court is affirmed.

*Order affirmed.*