### DOSS v. LINDSLEY, Sheriff of Piatt County, Ill.

Civ. No. 368–D.

District Court, E. D. Illinois.

Jan. 8, 1944.

A. M. Fitzgerald, of Springfield, Ill., for plaintiff.

O. D. Mann, Sp. State's Atty., of Danville, Ill., for defendant.

LINDLEY, District Judge.

Petitioner seeks a writ of habeas corpus to prevent his arrest by the Sheriff of Piatt County, Illinois, in pursuance of a mandate of the Supreme Court of Illinois, affirming judgment sentencing him for contempt of court, wherein he was committed to jail for three months and fined $2,000. The history of the offense and final disposition of the appeal by the Supreme Court appear in People v. Doss, 382 Ill. 307, 46 N. E.2d 984 decided January 21, 1943. A petition for rehearing was stricken on March 11, 1943, apparently because the court believed that it did not comply with the rules. Within three months from March 11, 1943, but longer than that after January 21, 1943, petitioner sought a review of the decision by the Supreme Court of the United States. Apparently upon the ground that striking the petition for rehearing was not such an order as would afford petitioner the right to apply for certiorari within three months therefrom, the Supreme Court of the United States denied the application, 64 S.Ct. 38, and still later a petition for rehearing. 64 S.Ct. 194. Subsequently the mandate from the Supreme Court of Illinois issued and, before petitioner could be arrested in pursuance of the affirmed judgment, he filed this application. The respondent has answered, denying that petitioner is deprived of his liberty and asserting that nothing in the petition justifies issuance of the writ.

█ We are confronted with the questions, first, whether, under the facts mentioned, petitioner is under such restraint of liberty as to give this court jurisdiction to entertain the petition; second, whether the circumstances are so extraordinary as to except the case from the rule abiding in federal courts that a petitioner in state custody shall first exhaust his remedy in the state courts; and, third, if this court has authority to entertain the proceeding, whether, on the merits, any defect appears on the face of the record nullifying the legality of the judgment. The last question involves the subordinate inquiries of whether the denial of jury trial or the alleged excessive sentence amount to deprivation of due process of law; whether the facts, as disclosed by the information and answer in the contempt proceedings, on their face, support a judgment for contempt of court and finally whether the sentence is void for lack of due process of law because the trial court made no findings of fact. Interwoven with these questions is the issue of whether the communications said to have been sent to grand jurors were such as petitioner had a right to issue in pursuance of his constitutional right of free speech.

██ The right to be discharged from illegal imprisonment by writ of habeas corpus ad subjiciendum was in use before Magna Charta. It exists as a part of our common law and our Constitution provides that no person shall be deprived of his liberty without due process of law. The proceeding in its essence is an application to the court to command one holding another in restraint or custody, to produce the body of that person in order to determine whether he is illegally restrained of his liberty. The sole function of the remedy is to relieve from unlawful imprisonment. See 29 Corpus Juris, Sections 1 to 6. "The purpose of the proceeding defined by the statute was to inquire into the legality of

the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful." McNally v. Hill, Warden, 293 U.S. 131, 136, 55 S.Ct. 24, 79 L.Ed. 238.

Thus the Supreme Court has said: "Its purpose is to enable the court to inquire, first, if the petitioner is restrained of his liberty. If he is not, the court can do nothing but discharge the writ. * * * There is no very satisfactory definition to be found in the adjudged case of the character of the restraint or imprisonment suffered by a party applying for the writ of habeas corpus, which is necessary to sustain the writ. * * * Obviously, the extent and character of the restraint which justifies the writ, must vary according to the nature of the control which is asserted over the party in whose behalf the writ is prayed. * * * it should be made clear that some unusual restraint upon his liberty of personal movement exists to justify the issue of the writ; otherwise every order of the superior officer directing the movements of his subordinate, which necessarily to some extent curtails his freedom of will, may be held to be a restraint of his liberty, and the party so ordered may seek relief from obedience by means of a writ of habeas corpus. * * * Something more than moral restraint is necessary to make a case for habeas corpus. There must be actual confinement or the present means of enforcing it. The class of cases in which a sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition. The officer has the authority to arrest, and the power to enforce it." Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 1053, 29 L.Ed. 277.

While the Acts of Congress are not decisive, perhaps, as to what is a restraint of liberty, they evidently contemplate existence of some actual restraint. Revised Statutes, 28 U.S.C.A. Chap. 14, Section 454, says the application must set forth "in whose custody he (the petitioner) is detained, and by virtue of what claim or authority, if known"; section 455, that "the writ shall be directed to the person in whose custody the party is detained"; section 457, that this person shall certify to the court the true cause of the detention; and by section 458 he is required to "bring the body of the party before the judge who granted the writ." If one is at large, with no one controlling or detaining him, his body cannot be produced by the person to whom the writ is directed, unless by consent of the alleged prisoner, or by his capture and forcible traduction into the presence of the court. Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

In McNally v. Hill, Warden, 293 U.S. 131, at page 138, 55 S.Ct. 24, at page 27, 79 L.Ed. 238, the court said: "Without restraint of liberty, the writ will not issue. Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Stallings v. Splain, 253 U.S. 339, 343, 40 S.Ct. 537, 64 L.Ed. 940. Equally, without restraint which is unlawful, the writ may not be used. *A sentence which the prisoner has not begun to serve can not be the cause of restraint which* the statute makes the subject of inquiry." (Italics supplied.)

From the language of the Supreme Court, it appears that where, as here, petitioner has not been arrested, his application is premature, for he is, as yet, deprived of no freedom of action. I think further that the question is not whether one who is on bond may apply for a writ, but rather whether one convicted but not arrested may so proceed. This I think he may not do. However, lest upon review, it should be thought that I should entertain the petition, I shall consider certain of the further questions presented.

I am asked to discharge petitioner from the duty to comply with the mandate of the Supreme Court of Illinois, on the ground that he has been deprived of his constitutional rights. The federal courts "will not ordinarily interfere by habeas corpus with the regular course of procedure under state authority, and in the absence of some emergency demanding prompt action, a party held in custody by a state will be left to stand his trial in the state court, and will be left to a review of the final judgment of the highest courts of the state by writ of error to the United States Supreme Court." 29 C.J. Sec. 8; Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969. "It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court, and subject to its laws, may, by the decision of a single judge of the Federal court, upon a writ of

habeas corpus, be taken out of the custody of the officers of the state, and finally discharged therefrom * * *." United States ex rel Drury v. Lewis, 200 U.S. 1, 7, 26 S.Ct. 229, 231, 50 L.Ed. 343. "The jurisdiction is more delicate, the reason against its exercise stronger, when a single judge is invoked to reverse the decision of the highest court of a state in which the constitutional rights of a prisoner could have been claimed and maybe were rightly decided, or, if not rightly decided, could be reviewed and redressed by a writ of error from this court." Markuson v. Boucher, 175 U.S. 184, 187, 20 S.Ct. 76, 77, 44 L.Ed. 124.

The state of Illinois has always recognized the remedy of habeas corpus. Remembering the duty of the federal court not to interfere with state proceedings unless the circumstances are so extraordinary as to create an emergency without adequate remedy, it follows that no federal court should take jurisdiction until existing remedies in the state court have been exhausted. The petition here does not aver that petitioner has filed any petition for writ of habeas corpus in any court of Illinois. He should first proceed there and if upon final review the Supreme Court of Illinois should not grant him relief, he has the right to apply to the Supreme Court of the United States for review. It is not meet that the District Court of the United States should interfere with the due process of law of Illinois. As the Supreme Court said in Mooney v. Holohan, 294 U. S. 103, at page 115, 55 S.Ct. 340, at page 343, 79 L.Ed. 791, 98 A.L.R. 406: "Orderly procedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open. Davis v. Burke, 179 U.S. 399, 402, 21 S.Ct. 210, 45 L.Ed. 249; Urquhart v. Brown, 205 U.S. 179, 181, 182, 27 S.Ct. 459, 51 L. Ed. 760; United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 70 L. Ed. 138. See, also, People of State of New York ex rel. Bryant v. Zimmerman, 278 U. S. 63, 70, 49 S.Ct. 61, 73 L.Ed. 184, 62 A.L.R. 785." It is not for me to assume in advance that the courts of Illinois will deny to petitioner his rights guaranteed by the Constitution of the United States and of Illinois and the statutes of the State. Rather we must keep in mind that if petitioner, after application to the state court, deems some federal constitutional right invaded, the statutes of the United States afford ample opportunity for review. Jones v. Dowd, 7 Cir., 128 F.2d 331; Davis v. Dowd, 7 Cir., 119 F.2d 338; Achtien v. Dowd, 7 Cir., 117 F.2d 989; Goodman v. Kunkle, Warden, 7 Cir., 72 F. 2d 334; United States v. Ragen, 7 Cir., 102 F.2d 184. These cases announce the law of the Seventh Circuit, founded upon the decisions of the Supreme Court in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann. Cas. 764; Mooney v Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Frank v. Mangum, Sheriff, etc., 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Whitten v. Tomlinson, Sheriff, etc., 160 U.S. 231, 16 S.Ct. 297, 40 L.Ed. 406; Joseph Wood v. Brush, Agent and Warden, etc., 140 U.S. 278, 11 S.Ct. 942, 35 L.Ed. 505; In re Shibuya Jugiro, 140 U.S. 291, 11 S.Ct. 770, 35 L.Ed. 510.

Nor are there any exceptional circumstances here to take the case out of the rule. As the Supreme Court said in Urquhart v. Brown, 205 U.S. 179, 182, 27 S.Ct. 459, 460, 51 L.Ed. 760, "The exceptional cases in which a Federal court or judge may sometimes appropriately interfere by habeas corpus in advance of final action by the authorities of the state are those of great urgency, that require to be promptly disposed of." As in Davis v. Dowd, 7 Cir., 119 F.2d 338, the record does not support any contention that the facts are exceptional or extraordinary. No emergency exists. Petitioner has not been arrested. There is no threat of deprivation of his right to ask the state courts to correct their alleged errors. Those courts are open. As we have said, we are not justified in assuming that they will deny petitioner due process of law. The facts are no more nearly extraordinary than those of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Kroschel v. Munkers, Chief of Police, D. C., 179 F. 961, and Botwinski v. Dowd, Warden, 7 Cir., 118 F.2d 829.

Irrespective of my conclusion that I should not take jurisdiction, I have examined the record in order to determine whether, upon the merits, it should be allowed.

The state court determined that petitioner was guilty of contempt because of

432

unauthorized interference with the administration of justice, resulting from petitioner's publishing five issues of The Liberty Press and delivering, or causing to be delivered, a copy of each to the foreman and the majority of the members of the grand jury, then investigating alleged violations by defendant of the criminal libel law. Petitioner contends that his conviction infringed upon the constitutional guarantees of freedom of the press and of speech.

The Illinois Supreme Court said of these two guarantees, People v. Doss, 382 Ill. 307, at page 315, 46 N.E.2d 984, 989: "These rights are not absolute. Neither liberty of the press nor freedom of speech have yet become license." These limitations are exemplified in the laws of libel and slander. A similar limitation is expressed in section 137 of the Criminal Code (U.S.C.A. Title 18, sec. 243), which provides: "Whoever shall attempt to influence the action or decision of any grand or petit juror of any court of the United States upon any issue or matter pending before such juror, * * * by writing or sending to him any letter or any communication, in print or writing, in relation to such issue or matter, shall be fined not more than $1,000, or imprisoned not more than six months, or both."

Concerning this statute in Duke v. United States, 4 Cir., 90 F.2d 840, at page 841, certiorari denied 302 U.S. 649, 685, 775, 58 S.Ct. 135, 82 L.Ed. 503, the court said: "There is no right on the part of one whose conduct is being investigated by a grand jury to petition the grand jury or to appear before it, which is guaranteed by the Constitution or otherwise; and it is important that the processes of criminal justice be not thus interfered with by those who have reason to think that their conduct is under investigation. * * * Congress for the protection of grand and petit jurors from this sort of interference has not only forbidden attempts to influence them 'corruptly, or by threats or force, or by any threatening letter or communication' (section 135, Crim.Code, 18 U.S.C.A. § 241), but has also forbidden any attempt to influence by the sending of any letter relating to any matter pending before them."

The Supreme Court considered, in Duke v. United States, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243, only the question of whether an offense under Section 137 could be prosecuted by information or whether it must be by indictment. It seems proper to assume, under these circumstances, that had there been any doubt of the constitutionality of Section 137, it would have been reflected in the opinion. Inasmuch as petitioner was not being investigated by a federal grand jury, Section 137 has no application. But failure of the Supreme Court to find unconstitutionality in the statute is of aid in determining the questions involved here. Here, as under the federal act, the judgment works a limitation upon the privilege of speaking or writing exactly as one pleases. I conclude that petitioner's contention that his constitutional rights of freedom of speech and freedom of the press have been abridged cannot be given serious consideration. If exercise of those "rights" may be limited in the federal courts, in order to prevent interference with the judicial function, it cannot be an abuse of power for state courts to do the same.

It is not fit, however, that we leave the subject of deprivation of freedom of the press and of speech without discussing petitioner's contention that Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192, requires a finding that he is not guilty of contempt.

The test laid down by the majority in that case further defines and limits that announced in Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138, as follows: Before a publication can be deprived of the constitutional protection of freedom of utterance, it must create a likelihood to an imminent degree of bringing about an *extremely serious* substantive evil. The italics are those added in the Bridges opinion. In applying the test, Mr. Justice Black gives further indication of the proper test in deciding the particular case (page 271 of 314 U.S., page 198 of 62 S.Ct., 86 L.Ed. 192): "We must therefore turn to the particular utterances here in question and the circumstances of their publication to determine to what extent the substantive evil of unfair administration of justice was a likely consequence, and whether the degree of likelihood was sufficient to justify summary punishment."

We turn now to the present matter for purposes of comparison and determining whether the Supreme Court of Illinois approved a void judgment in finding that the

publications had a tendency directly to impede, embarrass or obstruct the grand jury in the discharge of any of its duties.

In the Bridges case the publications were made by persons interested in the suit only as private citizens; here the publications were made by the defendant, who was vitally personally interested in the proceedings. In the Bridges case the publications were made after the decisions had been rendered but before sentences had been imposed; here the publications were made before the indictment had been returned, and were, in effect, an effort to prevent such indictment. In the Bridges case the publications could have affected only the judge (and the Supreme Court declared that he should, as a reasonable person, have known the facts); here attempts were made to influence members of the grand jury by telling them what procedure to follow and what the law was. Petitioner urged them to take action against his personal enemies.

Paraphrasing Mr. Justice Black's test and turning "to the particular utterances here in question and the circumstances of their publication to determine to what extent the substantive evil of unfair administration of justice was a likely consequence, and whether the degree of likelihood was sufficient to justify summary punishment," it is apparent that the Illinois court was not without justification in finding that the publications contained inherently a great likelihood of directly influencing to a serious degree the administration of justice. As a matter of fact several grand jurors proceeded directly to petitioner to discuss the matters and charges appearing in The Liberty Press, and being investigated by the jury, thus indicating that the administration of justice was actually interfered with.

It is not quite clear whether petitioner feels that he was denied due process because the trial court failed to make specific findings of fact, as such, or because he was denied a jury trial. In either event, the Illinois Supreme Court answered the contention by saying that in criminal contempt cases no issue of fact is presented, since defendant's sworn answer must be accepted as true and that, therefore, there can be no issue of fact for a jury to try. The judge must say as a matter of law, whether the averments of defendant's answer constitute contempt.

Surely the court need not make specific findings which could not possibly be other than those which defendant himself set up in his answer. In addition the Civil Practice Act, Section 64, Ill.Rev.Stat. 1943, c. 110, § 188, makes findings of fact unnecessary.

Further, however, petitioner's complaint that he was wrongfully denied a jury trial is without merit. The Supreme Court has held that a jury is not required by "due process of law" in contempt cases. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 1136, 38 L.Ed. 1047. The Illinois Supreme Court arrived at the same result in People v. Seymour, 272 Ill. 295, 111 N.E. 1008, and O'Brien v. People, 216 Ill. 354, 75 N.E. 108, 108 Am.St.Rep. 219, 3 Ann.Cas. 966. Then, too, it is elemental that where there is no conflicting evidence, the issue should be ruled on as a matter of law and should not go to a jury. Upton v. Tribilcock, 91 U.S. 45, 23 L.Ed. 203. The Illinois courts did not deny petitioner due process of law. As the court declared in a similar contempt proceeding, People v. Seymour, 272 Ill. 295, 302, 111 N.E. 1008, 1011: "Again, the plaintiff in error urges that the constitutional guaranty of due process of law was violated; but that was not a debatable question, since every constitutional requirement, as defined by the authorities, was observed. The plaintiff in error was apprised by the information of the nature of the charge against him and the facts he was called upon to explain, deny or justify. By the facts stated in his answer to the rule and to the interrogatories he admitted the facts, and the court found him guilty upon his own answer, so that there is no question but that there was due process of law."

Petitioner asserts that the judgment and sentence of three months in jail and a fine of two thousand dollars,— the sentence not to run concurrently with any other sentence,—is violative of the Eighth Amendment to the Constitution of the United States, in that the fine is excessive, and the jail sentence a cruel and unusual punishment and indefinite and uncertain. It is not necessary to consider this contention at length, since the amendment is not a limitation on state action. Ex parte Watkins, 7 Pet. 568, 573, 8 L.Ed. 786; Livingston v. Moore, 7 Pet. 469, 8 L.Ed. 751; Ex parte Spies, 123 U.S. 131,

166, 8 S.Ct. 22, 31 L.Ed. 80; Collins v. Johnston, 237 U.S. 502, 35 S.Ct. 649, 59 L.Ed. 1071.

Petitioner insists, however, that the averments of his sworn answer were such that the action of the court in finding him guilty of contempt was wholly unjustified, arbitrary and void. In the answer appeared the following averments: (1), Petitioner "did deliver some of said issues, or cause some of said issues to be delivered to the residence of the said foreman, Ed. Kanitz." (He qualifies this admission, however, by stating that the issues so delivered to Kanitz were by the usual mode of having a carrier throw copies of The Liberty Press upon the porches of householders.) (2) He may have given copies of The Liberty Press to Ed. Kanitz on one or two occasions, but does not think he gave such copies to Kanitz at his residence or elsewhere. (3) He probably gave copies of The Liberty Press to Kanitz when Kanitz called at the Doss office. Obviously these three statements are not in accord with each other. (4) He does not know whether he gave copies to Kanitz, Silvers, Busick, and Madden when they called at his office on approximately December 28. (5) " * * * he has no knowledge or way of determining what numbers of issues and to what Grand Jurors any of the certain issues were delivered to, but by reference to the date of December 23, 1941, Special Liberty #2, Sixth Division, and reading certain subject matters therein contained, respondent recalls that he did direct certain persons delivering some Liberty Issue numbers prior thereto and some subsequent thereto, to some of the members of the said Grand Jury, that the same were delivered to the residences of the said Grand Jurors, * * *." (He qualifies this admission again by stating that he does not know which issues were delivered, since his employees did the mailing.) (6) He then recites the alleged circumstances surrounding the publications, and his intent in making them, in these significant words: " * * * but respondent states that the purposes and intentions of this respondent in said premises and the circumstances under which the publications were made and such deliveries or mailings as were made to some or to all of the Grand Jurors, * * *" thus admitting that deliveries were made.

■ There is neither express denial nor express admission. His statement is, in effect, that he is not certain. He does, however, admit that he directed carriers to deliver issues of his paper to the residences of members of the grand jury. This in itself sustains only the ultimate finding that he delivered or caused to be delivered to members of the grand jury the publications complained of.

■ The theory of the Illinois law is that by his sworn answer defendant must either purge himself or admit his guilt. Here the petitioner did not deny specifically the charges sworn to in the information filed but made the admissions quoted and proceeded to set up alleged extenuating circumstances as an excuse. I can see no denial of due process of law in the state court's conclusion that he failed to purge himself of the contempt and that, as a matter of law upon the undisputed facts, he was guilty of the charge against him.

The foregoing includes my findings of fact and conclusions of law.

The petition for writ of habeas corpus is denied. Inasmuch as petitioner's counsel has said that, in case of an adverse decision, an appeal will be taken, it is ordered that petitioner remain at large upon bail for thirty days for the purpose of perfecting his appeal and, in case the appeal shall be perfected, that he remain on bail without interference by respondent until final determination of the appeal.