# Illinois Official Reports

## Appellate Court

---

### *People v. Perez-Gonzalez*, 2014 IL App (2d) 120946

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. RAUL PEREZ-GONZALEZ, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0946 |
| Filed<br>Rehearing denied | June 26, 2014<br>July 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for direct contempt based on his refusal to testify against a codefendant in a prosecution for a drive-by shooting, the appellate court rejected defendant's contention that the prosecution of defendant for direct contempt violated his plea agreement, since defendant's plea agreement required that he testify against the codefendant, the agreement did not limit the sanctions for defendant's refusal to testify to the vacation of the 15-year sentence enhancement for using a firearm, the trial court did not err in denying defendant's motion for substitution of judge where the motion named two judges, not just one judge as provided by the statute, and the 10-year sentence was not an abuse of discretion, especially when defendant's refusal to testify prevented the State from proving the codefendant was the shooter and was subject to the statutory 25-year enhancement of his sentence. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CC-42; the Hon. David R. Akemann and the Hon. James C. Hallock, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1      The respondent, Raul Perez-Gonzalez, was convicted of direct criminal contempt of court and subsequently sentenced to 10 years' imprisonment. On appeal, the respondent argues that (1) the State's petition for contempt violated his plea agreement, (2) his refusal to testify was not punishable as contempt, (3) the trial court erred in denying his motion for substitution of judge, and (4) his sentence was excessive. We affirm.

¶ 2      BACKGROUND

¶ 3      On January 29, 2009, a woman was fatally shot as she drove her car in Elgin. The day after the incident, the respondent admitted to the police that he was driving the sport utility vehicle (SUV) from which the shots were fired and that the shooting was gang-related. The respondent identified four other people who were inside the SUV with him at the time of the murder. The respondent was charged with first-degree murder under a theory of accountability, as was Manith Vilayhong, the passenger who ordered the shooting. Tony Rosalez was charged with first-degree murder as the alleged shooter.

¶ 4      In 2010, the respondent entered into a plea agreement with the State. In return for pleading guilty, the respondent was sentenced to 35 years' imprisonment, with an agreement that, after he testified against Vilayhong and Rosalez, the State, at its sole discretion, would vacate or delete the charge's reference to a firearm and would request that the 15-year firearm enhancement be vacated from his sentence. The respondent would thereby end up with a 20-year sentence.

¶ 5      On October 28, 2011, the State appeared in court for a status hearing on the case against Rosalez. The State asserted that the Rosalez trial was set to begin the following Monday and that it appeared that the respondent was planning to refuse to testify. The State requested that the respondent be brought before the court, placed under oath, and asked whether he intended to testify against Rosalez. The trial court granted the request and the respondent appeared with

counsel. Upon questioning by the State as to whether he knew Rosalez or drove a white SUV on January 30, 2009, the respondent answered "No." After a recess, the respondent's counsel explained that the respondent's stated response was not in relation to the question asked but was an indication that he did not want to answer any questions. The respondent then testified that "no" meant that he did not want to answer any questions.

¶ 6        The State then asked the respondent if he was driving an SUV on January 30, 2009, when Rosalez shot a gun out the window toward another vehicle. The respondent stated that he was not going to answer the question. The State then questioned the respondent as to whether he intended to refuse to answer any questions related to the shooting on January 30, 2009. The respondent answered "yes." The following colloquy ensued:

> MR. SAMS [Assistant State's Attorney]: Judge, I would ask that you admonish the [respondent] or that you order him to testify as he has asserted and has no right to decline to answer questions.
>
> THE COURT: Ms. Yetter?
>
> MS. YETTER [Defense Counsel]: Your Honor, I don't take a position on the State's request.
>
> THE COURT: Okay, he isn't called as a witness in a case at this point, correct? This inquiry is so you can determine what you want to do Monday, correct?
>
> MR. SAMS: Well, Judge, assuming with that, with his refusal to testify, Judge, I think I believe that I need for you to order him to testify.
>
> Once he then continues to refuse to testify, we will deal with his case and his issue; but that's going to prompt me on Mr. Rozalez's [*sic*] case this afternoon to file a motion to continue.
>
> THE COURT: That would be the court's order, sir, directing you to answer the question posited by Mr. Sams. So this is the court's order that you answer the questions, sir.
>
> Do you wish to have the question read again?
>
> THE WITNESS: No, because I'm not gonna answer.
>
> THE COURT: All right, sir, the court would find you in direct contempt.
>
> Remove that person right now."

The State then indicated its intent to file a petition seeking to have the respondent adjudicated in direct criminal contempt.

¶ 7        On November 11, 2011, the State filed its petition for adjudication of direct criminal contempt. The petition stated that on October 28, 2011, the respondent "refused to testify despite the Court's order and persists in that refusal to testify." The State noted in the petition that there was no maximum penalty for contempt and that it would be pursuing a sentence in excess of six months.

¶ 8        On January 3, 2012, Judge David Akemann vacated his October 28, 2011, order of contempt and recused himself from the case, finding that he might be a witness in the proceedings. The case was reassigned that same day to Judge James Hallock. Also on that day, the respondent filed a motion for substitution of judge, pursuant to section 114-5(a) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/114-5(a) (West 2010)), requesting that his case be reassigned to a judge other than Judges Hallock and Patricia Piper

Golden. On January 6, 2012, a hearing was held on the motion for substitution of judge. The State argued that this was a contempt case, which is considered neither civil nor criminal, and that the respondent was not entitled to a substitution of judge as of right. The respondent argued that the penalty being sought in this case was so severe that it was akin to a criminal case and that the respondent was entitled to a substitution of judge as of right just like any other criminal defendant. On January 20, 2012, the trial court denied the motion for substitution of judge, finding that a substitution of judge as of right was not available in a contempt proceeding.

¶ 9 On February 22, 2012, the respondent waived his right to a jury trial and the parties entered a written stipulation of evidence. Pursuant to that stipulation, the respondent acknowledged that he entered a plea agreement with the State as to his first-degree murder charge and that the agreement "required [the respondent] to testify truthfully in any case against any co-defendant." He further acknowledged that on October 28, 2011, after having been sworn at the final pretrial hearing in the Rosalez case, he refused to answer any of the State's questions. Although the respondent stipulated to the evidence, he did not stipulate that the evidence supported a finding of contempt.

¶ 10 On March 22, 2012, a hearing was held on the contempt petition. On May 2, 2012, the trial court found that the respondent was in contempt on October 28, 2011, for failing to testify in the Rosalez case as ordered by the trial court. The trial court ordered a presentence investigation report.

¶ 11 On June 28, 2012, following the denial of the respondent's motion to reconsider the contempt finding, a sentencing hearing was held. The State submitted a written stipulation signed by the parties. Pursuant to that stipulation:

> "Before going to trial, the respondent entered into an agreement with the People of the State of Illinois to testify against *** Rosalez. The [plea] agreement required the [respondent to] give truthful testimony [in the case against Rosalez]. He would be sentenced to the minimum sentence of 20 years in prison plus the 15-year add-on. When he completed his end of the agreement, his sentence would be reduced to 20 years."

The stipulation also indicated that the State proceeded in the case against Rosalez without the respondent's testimony. The other passengers testified to what occurred in the SUV, but they either were impeached or gave inconsistent statements. Rosalez was found guilty of first-degree murder, but the jury found not proven the allegation that Rosalez personally discharged the firearm. Rosalez was sentenced to 35 years in prison.

¶ 12 Following testimony and arguments of counsel, the trial court rendered its ruling. In mitigation, the trial court noted that the respondent's failure to testify did not cause or threaten physical harm. The trial court also considered that the respondent, other than his conviction of first-degree murder, did not have any criminal history. In aggravation, the trial court noted that the respondent's refusal to testify hindered the State's prosecution of Rosalez. The trial court found that the respondent's sentence should serve as a deterrent to other similar conduct. The trial court thus sentenced the respondent to 10 years' imprisonment, consecutive to his term for first-degree murder. Following the denial of the respondent's motion to reconsider, the respondent filed a timely notice of appeal.

¶ 13                                    ANALYSIS

¶ 14      The respondent's first contention on appeal is that the filing of the petition for adjudication of contempt violated the terms of his plea agreement. Specifically, the respondent argues that the State breached the plea agreement when it sought a contempt finding based on the respondent's failure to testify against Rosalez. The respondent notes that *People v. Goodwin*, 148 Ill. App. 3d 56 (1986), supports a finding of contempt based on a defendant's refusal to testify pursuant to a plea agreement. See *id.* at 61 (a defendant who promises, as a part of a plea agreement, to give testimony in aid of the prosecution waives fifth amendment rights in that respect and is subject to a contempt sanction for refusal to do so). The respondent argues, however, that *Goodwin* is distinguishable because, unlike in the present case, in *Goodwin* there was no predetermined consequence in the event of noncompliance. Specifically, in the present case, the respondent's failure to comply meant that the State would not move to vacate the 15-year add-on.

¶ 15      Both the State and the defendant are bound by terms of a plea agreement. *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005). Plea agreements are governed to some extent by principles of contract law. *People v. Evans*, 174 Ill. 2d 320, 326 (1996). However, plea agreements are constitutionally based and therefore "reflect[ ] concerns that differ fundamentally from and run wider than those of commercial contract law." (Internal quotation marks omitted.) *Id.* For example, if a plea of guilty is entered in reliance on a plea agreement, a defendant may have a due process right to enforce the agreement. *Whitfield*, 217 Ill. 2d at 189. As such, the application of contract law to plea agreements may require modification in some instances. *Evans*, 174 Ill. 2d at 326-27. The construction or interpretation of a contract and its legal effect presents a question of law, which we review *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005).

¶ 16      In the present case, the State's petition for adjudication of contempt did not violate the plea agreement. The parties stipulated to the content of the plea agreement. Further, pursuant to our request, the respondent supplemented the record with a transcript of his 2010 guilty plea hearing. Moreover, the State supplemented the record with a copy of the written plea offer. The discussion of the plea agreement at that hearing and the written plea offer are in consonance with the stipulations entered by the parties. The February 22, 2012, stipulation stated that the plea agreement "required" the respondent to testify "in any case against any co-defendant." The June 28, 2012, stipulation stated that the plea agreement "required" the respondent to give truthful testimony against Rosalez. The October 28, 2011, hearing was part of the "case" against Rosalez. Accordingly, based on the stipulations, the plea agreement clearly required the respondent to testify against Rosalez at that hearing and his failure to do so violated that agreement.

¶ 17      The respondent notes that at the October 28, 2011, hearing, the State described the plea agreement as follows:

              "[The respondent's] plea agreement was he–was he pled guilty to first degree murder; was sentenced to 35 years with an agreement that when he completed his cooperation in this case, at the sole discretion of the State, we would ask the court to vacate the 15-year add-on in his case, and he would end up with a 20-year sentence on his case as opposed to 35."

The respondent argues that the plea agreement had a built-in sanction (if he refused to testify the State would not move to vacate the 15-year add-on) and that the State's petition for

- 5 -

contempt was a further sanction that was contrary to the agreement. We disagree. Nothing in the stipulations or at the October 2011 hearing supports this argument. The stipulations do not indicate that the State agreed that the only consequence for the respondent's failure to testify would be the State's not moving to vacate the 15-year add-on. The statement at the October 2011 hearing indicates that the plea agreement was in exchange for the respondent's testimony and that, when he completed his testimony, the State could, in its discretion, move to vacate the 15-year add-on. As the plea agreement required the respondent to testify at the Rosalez trial, the State did not violate the agreement by petitioning for an adjudication of contempt when he refused to testify. *Goodwin*, 148 Ill. App. 3d at 61.

¶ 18        Moreover, even if we were to view the plea agreement as containing a built-in sanction and, therefore, the State as having breached the agreement by petitioning for an adjudication of contempt, it would still not provide a defense for the respondent to the charge of contempt. "The public is entitled to any man's evidence concerning criminal acts committed by another." *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir. 1976). Here, the court ordered the respondent to testify at the October 28, 2011, hearing and the court was empowered to compel his testimony. See *id.* Accordingly, even if the State had breached the plea agreement, the breach would not have authorized the respondent to refuse the court's order to testify at the October 28, 2011, hearing. See *United States v. Simmons*, 215 F.3d 737, 741 (7th Cir. 2000) (holding that even if the government breached the plea agreement, the defendant should have testified as ordered by the court and brought a separate action to enforce the terms of the plea agreement).

¶ 19        The respondent next argues that his refusal to answer questions at the pretrial hearing was not punishable as contempt, because the plea agreement required him to testify at Rosalez's trial, and the October 28, 2011, hearing was not the trial. In arguing that the respondent was properly found in contempt prior to Rosalez's trial, the State relies on *People v. Powers*, 122 Ill. App. 3d 629 (1984). In *Powers*, the defendant was being prosecuted for arson. His attorney filed a motion for a temporary restraining order (TRO) to prevent the State from using certain testimony obtained in a grand jury proceeding. The trial court denied the TRO and set the matter for trial. The attorney filed an interlocutory appeal. *Id.* at 629-30.

¶ 20        Just prior to the start of trial, the attorney argued that the interlocutory appeal divested the trial court of jurisdiction and, therefore, neither he nor his client would participate in the trial. The trial court granted a motion by the State to quash the appeal because the defendant did not have a right to an interlocutory appeal in a criminal case. *Id.* at 630. The trial court warned the attorney that, if he did not participate in the trial, he would be held in contempt. The attorney refused to comply with the judge's request and was thus held in direct criminal contempt of court. *Id.* The attorney appealed. *Id.* The reviewing court affirmed the finding of contempt:

> "Here, we have a case of direct criminal contempt. The lawyer and judge were face to face shortly before trial. [The trial court] explicitly instructed [the attorney] that if he did not participate in the trial, he would be held in contempt. [The attorney] deliberately chose not to respect the wishes of the court and prevented the court from holding the trial. Such an act by a lawyer can be characterized as nothing other than conduct calculated to hinder or obstruct a court in its administration of justice, or to derogate from its authority or dignity. [Citation.] Thus, it was criminally contemptuous." *Id.* at 631.

¶ 21    We find the State's reliance on *Powers* persuasive. *Powers* demonstrates that a finding of criminal contempt is proper based on actions that occur before a trial begins and cause a delay in the trial. In the present case, the respondent's refusal to testify resulted in a delay of Rosalez's trial. Although as in *Powers* the trial had not yet begun, the respondent was called and ordered to testify at the final pretrial hearing and his failure to testify resulted in the State's having to file a motion to continue. The State's petition indicated that the respondent "persist[ed]" in his refusal to testify. We note that Rosalez was not tried until early 2012. The record demonstrates that during the pendency of these contempt proceedings the respondent never changed his mind about refusing to testify and that in fact he never testified at the Rosalez trial. As in *Powers*, the respondent's conduct clearly qualified as criminal contempt. See also *United States v. Johnson*, 752 F.2d 206, 210 (6th Cir. 1985) (the refusal to testify at a pretrial deposition hearing was not anticipatory contempt; rather, it was a present refusal to testify at the proceeding itself and was a proper basis for a contempt finding).

¶ 22    In so ruling, we find the respondent's reliance on *State v. Matos*, 640 A.2d 1176 (N.J. Super. Ct. App. Div. 1994), unpersuasive. *Matos* involved the question of whether a witness could be held in civil contempt of court based on a statement that he intended not to testify. In *Matos*, the State sought and the trial court approved a grant of immunity in order to compel the defendant to testify against his codefendants. The trial court held the defendant in contempt when the defendant stated at a hearing that he did not intend to testify despite the grant of immunity. The defendant appealed from the contempt finding. The reviewing court reversed the contempt finding and held that "[d]efendant should not have been adjudged guilty of contempt in anticipation of his future refusal 'to answer a question' not yet formulated or asked of him." *Id.* at 1184.

¶ 23    The *Matos* court's determination was based on an interpretation of a statute that specifically related to finding an individual in contempt when immunity had been given. The statute provided that in any criminal proceeding before a court or grand jury: "*If a person refuses to testify after being granted immunity* from prosecution and *after being ordered to testify as aforesaid*, he may be adjudged in contempt and committed to the county jail until such time as he purges himself of contempt by testifying as ordered ***.*" (Emphases in original.) *Id.* at 1181. The court thus asserted that its decision turned on whether the hearing at which the defendant stated that he did not intend to testify and was adjudged in contempt constituted "criminal proceedings before a court or grand jury" as required by the statute. (Internal quotation marks omitted.) *Id.* at 1182. The hearing was not the codefendant's trial. Rather, the hearing was held solely for the purpose of determining whether the defendant was going to testify at the codefendant's trial at some unspecified time in the future. The court held, therefore, that the hearing did not fall within the statutory requirement of a criminal proceeding, nor did the defendant's conduct fit within the conduct to be punished, *i.e.*, refusal to testify.

¶ 24    *Matos* is distinguishable from the present case. First, *Matos* dealt with the interpretation of a statute not at issue in this case. Further, the *Matos* defendant was merely asked if he intended to comply with the court order to testify at some unspecified time in the future. In the present case, the respondent was brought before the court at the final pretrial hearing on the Rosalez case, placed under oath, and asked the questions he was going to be asked at trial. The court ordered the respondent to answer those questions at that time. The respondent stated that he had no intention of answering any questions asked by the prosecutor. Thus, unlike in *Matos*,

the respondent was ordered to testify at the hearing that resulted in his adjudication of contempt.

¶ 25    Further, *Matos* involved a finding of civil contempt and the holding was based on the rationale that such a coercive sanction could not be imposed where the time for performance had not yet arrived. Civil contempt involves sanctions that are prospective and seek to coerce particular conduct. *People v. R.J. Reynolds Tobacco Co.*, 2011 IL App (1st) 101736, ¶ 33. Criminal contempt is designed to punish past conduct. *Id.* In the present case, the respondent was found in criminal contempt for failing to testify as agreed to in his plea agreement and as ordered by the trial court.

¶ 26    The respondent's next contention on appeal is that the trial court erred in denying his motion for substitution of judge. The respondent had filed his motion for substitution pursuant to section 114-5(a) of the Code (725 ILCS 5/114-5(a) (West 2010)), which provides:

> "§ 114-5. Substitution of judge. (a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony or may be punished by death or life imprisonment, the defendant may name two judges as prejudiced."

¶ 27    The parties disagree as to whether section 114-5(a) of the Code is applicable to criminal contempt proceedings. In *People v. Doss*, 382 Ill. 307 (1943), a case involving indirect criminal contempt, our supreme court noted that the venue statute allowed for only one change of venue and that, because the defendant had already been granted two requests for change of venue, his third request was properly denied. *Id.* at 311. The court went on to note that "there is respectable authority for the proposition that statutory provisions relative to change of venue do not apply to proceedings to punish contempts, unless such proceedings are expressly included, *eo nomine*, in the statute." *Id.* "The reason assigned for inapplicability of change of venue statutes to contempt proceedings is that a contempt is neither civil nor criminal in fact, but *sui generis*." *Id.* at 311-12.

¶ 28    *Doss* was subsequently cited in another indirect-criminal-contempt case for the proposition that the statute allowing for substitution of judge as of right in a criminal case does not apply to criminal contempt proceedings. See *People v. Parker*, 397 Ill. 305, 308 (1947). In *Parker*, our supreme court stated:

> "The petition for change of venue on account of prejudice of two of the judges does not come within the provisions of the venue statute in contempt proceedings. (Ill. Rev. Stat. 1945, chap. 146, par. 21a [allowing for substitution of judge 'in contempt proceedings [only] from judge impugned'].) The right to change of venue is statutory, and the applicant must bring himself within the statutory requirements. [Citation.] No other provision for change of venue in contempt cases appears in the statute." *Id.* (citing *Doss* for the proposition that "the general statute pertaining to change of venue in criminal cases" does not apply to criminal contempt proceedings, which are *sui generis*).

Accordingly, the court held that the criminal statute relating to change of venue, or substitution of judge as of right, did not apply in criminal contempt proceedings.

¶ 29　　　However, in *People v. Goss*, 10 Ill. 2d 533, 548 (1957), a case that involved indirect criminal contempt, our supreme court found that the statute that allowed for substitution of judge as of right by the filing of an affidavit of prejudice (Ill. Rev. Stat. 1955, ch. 146, ¶ 21 (now 725 ILCS 5/114-5(a) (West 2010))) was applicable to a criminal contempt proceeding and that the trial court erred when it denied the defendant's request for change of venue. Further, in *People ex rel. Kunce v. Hogan*, 67 Ill. 2d 55, 62 (1977), a more recent case involving direct criminal contempt, the defendant argued that the trial court erred in denying his motion for substitution of judge. In response, our supreme court stated:

> "Section 114-5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114-5) provides that in criminal cases there is an absolute right to a substitution of judges from two judges on general allegations of prejudice. The statute also provides for an unlimited number of substitution of judges for cause." *Id.* at 63.

Our supreme court held that the denial was proper–not because the statute was not inapplicable, but because the motion did not comply with the statute. *Id.* Specifically, by requesting disqualification of all the judges in the circuit, the motion named more judges than authorized by the statute, which allowed the naming of only two judges. *Id. Kunce* and *Goss* have since been cited for the proposition that substitution of judge as of right under section 114-5(a) of the Code is applicable in criminal contempt proceedings. See *Payne v. Coates-Miller, Inc.*, 68 Ill. App. 3d 601, 608 n.4 (1979) (citing *Kunce*); *People v. Wright*, 20 Ill. App. 3d 96, 103 (1974) (citing *Goss*); see also *Hoga v. Clark*, 113 Ill. App. 3d 1050, 1059 (1983) (citing *Payne* and *Wright* for this proposition); *SKS & Associates, Inc. v. Dart*, 2012 IL App (1st) 103504, ¶ 21 (citing *Hoga*).

¶ 30　　　Based on the foregoing authority, we find that the case law is not clear, as neither *Kunce* nor *Goss* acknowledged *Doss* and *Parker*. Nonetheless, *Kunce* and *Goss* are our supreme court's most recent word on this issue, and we therefore follow them. See *People v. Perkins*, 367 Ill. App. 3d 895, 905 (2006). Accordingly, the trial court was incorrect when it stated that substitution of judge as of right pursuant to section 114-5(a) was not available in a criminal contempt proceeding.

¶ 31　　　Nonetheless, we may affirm on any basis appearing in the record. See *People v. Dinelli*, 217 Ill. 2d 387, 403 (2005) (noting that an appeals court may affirm a trial court's ruling on any basis appearing in the record). In the present case, although the trial court's reasoning might have been improper, it did not err in denying the motion for substitution of judge, because the respondent's motion was not in proper form. The respondent's motion named two judges–Judge Hallock and Judge Golden–rather than one judge as allowed for in the statute. See 725 ILCS 5/114-5(a) (West 2010). The failure to file such a motion in proper form is a sufficient basis on which to deny the motion. *People v. Saunders*, 135 Ill. App. 3d 594, 600 (1985) (citing *Kunce*, 67 Ill. 2d at 63).

¶ 32　　　The respondent notes that contempt has no sentencing guidelines (*People v. Geiger*, 2012 IL 113181, ¶ 27), and he argues that therefore it is possibly punishable by death or life imprisonment. Thus, he reasons, he was permitted to name two judges in his motion. In so arguing, the respondent is relying on the portion of the statute indicating that "in a case in which the offense charged is a Class X felony or may be punished by death or life imprisonment, the defendant may name two judges as prejudiced." 725 ILCS 5/114-5(a) (West 2010).

¶ 33    The respondent correctly cites *Geiger* for the proposition that contempt has no sentencing classification or sentencing range set by the legislature. *Geiger*, 2012 IL 113181, ¶ 24. Accordingly, it is axiomatic that contempt is not a Class X felony. *Id.*; see also 730 ILCS 5/5-4.5-25 (West 2010) (setting forth the sentencing guidelines for a Class X felony). The question then is whether contempt "may be punished by death or life imprisonment" (725 ILCS 5/114-5(a) (West 2010)). Although contempt has no statutory sentencing guidelines, a trial court is bound by certain principles when sentencing for contempt. Criminal contempt is punishable by fine or imprisonment or both. *Bloom v. Illinois*, 391 U.S. 194, 201 (1968). However, a sentence of imprisonment must not be "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). Further, the punishment for contempt should reflect the least possible power adequate to the end proposed. *United States v. Bukowski*, 435 F.2d 1094, 1110 (7th Cir. 1970). Based on these principles, a sentence of death for contempt is not permissible. *Bloom*, 391 U.S. at 201. Further, a sentence of life imprisonment for contempt, under the present circumstances, would be disproportionate to the nature of the offense. See *Geiger*, 2012 IL 113181, ¶ 29 (supreme court held that a 20-year sentence for criminal contempt, based on a defendant's refusal to testify as a State's witness in double murder prosecution, was manifestly disproportionate to the nature of the offense). Accordingly, we reject the respondent's argument that he was entitled to name two judges in his motion.

¶ 34    The respondent's final contention on appeal is that his sentence of 10 years' imprisonment constituted an abuse of discretion. A sentence imposed for direct criminal contempt is reviewed for an abuse of discretion. *Id.* ¶ 27. A court abuses its discretion when a sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* A reviewing court must give great deference to a trial court's sentence because the trial judge, having observed the defendant and the proceedings, is in a better position to consider "the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Because there are no sentencing guidelines in contempt cases, reviewing courts must ensure that the contempt power is not abused and, if necessary, should revise the sentences imposed. *Geiger*, 2012 IL 113181, ¶ 27. In determining an appropriate sentence for criminal contempt, a court should consider the following factors: "(1) the extent of the willful and deliberate defiance of the court's order, (2) the seriousness of the consequences of the contumacious behavior, (3) the necessity of effectively terminating the defendant's defiance as required by the public interest, and (4) the importance of deterring such acts in the future." *Id.* ¶ 28 (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 302-03 (1947)).

¶ 35    In *Geiger*, the defendant was found guilty of direct criminal contempt for refusing to testify as a State's witness at a murder trial, and he was sentenced to 20 years' imprisonment. *Id.* ¶ 1. Our supreme court held that the sentence was manifestly disproportionate to the nature of the offense. *Id.* ¶ 29. In reaching that conclusion the court considered: (1) the defendant's refusal to testify was based on a mistaken belief that he had a fifth amendment right not to testify; (2) his refusal to testify might have been driven by fear of retaliation (the defendant was a gang member and the murder was gang-related); (3) the refusal to testify did not hamper the State's ability to prosecute the individual on trial for murder (who was convicted and sentenced to life imprisonment); and (4) the defendant's contemptuous conduct was nonviolent and he was not

flagrantly disrespectful to the trial judge. *Id.* ¶¶ 29-31. The court remanded the matter for the trial court to impose a more reasonable sentence. *Id.* ¶ 32.

¶ 36    The respondent argues that the circumstances here are similar to those in *Geiger*. Similarities include the prospect of gang retaliation, that Rosalez was convicted of first-degree murder despite the absence of the respondent's testimony, and that the respondent did not act against the court in a violent or flagrantly disrespectful way. The respondent further argues that there is no published Illinois case involving a contempt sentence longer than six months and that the only federal case where the court affirmed a contempt sentence as long as 10 years involved the defendant's attacking a witness with a screwdriver (*United States v. DiPaoli*, 804 F.2d 225, 234 (2d Cir. 1986)). The respondent points out that federal courts that have reduced sentences for contempt have found it illogical to punish people more severely for refusing to testify than for testifying falsely. (The maximum sentence for perjury in federal court is five years' imprisonment.) See *United States v. Gracia*, 755 F.2d 984, 990 (2d Cir. 1985) (9-year sentence for refusing to testify reduced to 4 years); *United States v. Gomez*, 553 F.2d 958, 959 (5th Cir. 1977) (15-year sentence for refusing to testify reduced to 2 years).

¶ 37    The State argues that the sentence is not excessive, because (1) the respondent had no right to refuse to testify, and (2) due to his failure to testify, the State was unable to prove that Rosalez was the shooter, which precluded a statutory 25-year add-on to Rosalez's sentence. The State also notes the severity of the underlying crime and that the respondent chose to protect fellow gang members rather than to "align himself with the recognized government of our society and seek justice for the innocent victim."

¶ 38    We agree with the State. The factors listed in *United Mine Workers* favor imposition of a substantial sentence. As to the first factor, the respondent's refusal to testify was willful and deliberate as he was not under a mistaken belief that he had a fifth amendment right not to testify. Additionally, regarding the second factor, the underlying crime at issue here, first-degree murder, was serious and the respondent's failure to testify hindered the public interest in finding the truth and seeking justice. Finally, as to the third and fourth factors, the public interest in terminating the defiance and the importance of future deterrence both favor a substantial sentence. The severity of the sentence here properly deters future witnesses from refusing to testify and obstructing the administration of justice in serious criminal cases. The trial court specifically stated that the respondent's failure to testify hindered the prosecution of Rosalez and that the sentence was meant to serve as a deterrent to future witnesses. The trial court's sentencing decision is entitled to great deference. Accordingly, we cannot say that the trial court abused its discretion in imposing the sentence.

¶ 39    As noted, in arguing that his sentence is excessive, the respondent points to federal cases where contempt sentences were reduced because courts found it illogical to punish contempt more severely than perjury. In Illinois, perjury is a Class 3 felony punishable by two to five years' imprisonment. 730 ILCS 5/5-4.5-40 (West 2010). However, an extended term of 5 to 10 years may be imposed if there are aggravating factors present. See 730 ILCS 5/5-8-2(a), 5-5-3.2(b) (West 2010). Here, the respondent would have been eligible for an extended-term sentence for perjury, based on his prior conviction of the same or a greater class offense–specifically, his murder conviction. See 730 ILCS 5/5-5-3.2(b)(1) (West 2010). Accordingly, the respondent's insinuation that his 10-year sentence for contempt is more onerous than a possible sentence for perjury is without merit.

¶ 40                                    CONCLUSION

¶ 41            For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 42            Affirmed.